# UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

------------------------------------------------------------------------ x

JOHN DOE A.L.,

                                     Plaintiff,

                 -against-

UNITED STATES OF AMERICA, and
MARK WISNER,

                               Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT**

16-CV-2627 (CM)(TJJ)

------------------------------------------------------------------------ x

## PRELIMINARY STATEMENT

Plaintiff John Doe A.L. was a patient of Mark Wisner, a convicted sexual predator who exploited United States resources to engage in sexual misconduct under the guise of medical care. In this civil lawsuit, Plaintiff seeks to hold the United States liable under the Federal Tort Claims Act ("FTCA") for the same conduct that placed Wisner in prison. Plaintiff's lawsuit fails for a number of reasons.

First, the FTCA does not extend to claims for acts of government employees acting outside of the scope of their employment. And Congress explicitly removed claims for intentional conduct, such as alleged by Plaintiff herein, from the FTCA's reach. This Court permitted Plaintiff's claims to survive the United States' Motion to Dismiss because the Court determined his Complaint plausibly alleged Wisner's misconduct was within the scope of his employment. But two years of discovery has proved otherwise. The United States will show in this motion for summary judgment that Plaintiff's claims against the United States are based on the very same intentional conduct he alleged from the

beginning: that Wisner, between 2012-2014, repeatedly subjected him to "sexual advances, assaults, and comments." SF-95 (Ex. G) at 1.

Second, the United States will establish that Plaintiff's claim that he was allegedly harmed by the VA's negligent supervision of Wisner also fails for two independent reasons. As an initial matter, Plaintiff failed to properly present a claim for negligent supervision to the VA, as required by 28 U.S.C. § 2675(a). Having failed to do so, Plaintiff's claim for negligent supervision is not properly exhausted and must be dismissed for lack of subject-matter jurisdiction. Moreover, Congress determined that the FTCA does not extend to claims based on a government employee's discretionary decisions. The manner in which an employee is supervised is such a decision. Again, Plaintiff's artful pleading allowed his Complaint to survive the United States' Motion to Dismiss. Plaintiff identified a VA Policy that states that a supervisor must review five randomly selected medical encounter notes every quarter, and alleged that Wisner's supervisor's failure to do this caused Plaintiff's injuries. But common sense, supported by the results of two years of discovery, dictates otherwise. In this motion, the United States will show that the true source of Plaintiff's injuries was not the alleged failure to review five randomly selected patient encounter notes, but rather the decisions regarding the corrective action to be taken, if any, in response to any deficiencies those reviews would reveal. And such decisions are shielded from liability by the discretionary function exception. Plaintiff's attempt to avoid the discretionary function exception by isolating alleged non-discretionary conduct from the true source of his harm is a strategy that the courts, including the Tenth Circuit, have specifically rejected.

In this motion for summary judgment, the United States will show that there is no genuine dispute over the material facts, and the United States is entitled to judgment as a matter of law. Discovery has confirmed the inevitable. Plaintiff's claims against the United States cannot stand.[1]

## STATEMENT OF MATERIAL UNDISPUTED FACTS[2]

In accordance with Local Rule 56.1, the United States sets forth the following material facts as to which no genuine dispute exists:

1. Mark Wisner was hired by the Department of Veterans Affairs ("VA") in 2008 as a Physician Assistant ("PA"). *See* Pretrial Order, Dkt. No. 49, p. 3, ¶ 2(a)(1).

2. A Physician Assistant at the VA is employed to administer basic medical care and screening to veteran patients. *See* VHA Dir. 1063 (Ex. A).

3. Wisner served as the primary care provider for approximately 750 to 1000 patients at the VA Medical Center in Leavenworth, Kansas ("VAMC"). *See* Cline Dep. (Ex. B) at 71:3-7, 225:8-18.

4. Plaintiff first saw Wisner at the VAMC on July 13, 2012. *See* Pretrial Order, Dkt. No. 49, p. 6, ¶ 2(b)(7).

5. Plaintiff last saw Wisner at the VAMC on February 25, 2014. *See* Pretrial Order, Dkt. No. 49, p. 7, ¶ 2(b)(10).

---

[1] The United States also maintains that Plaintiff's claims against the United States are barred by the FTCA's statute of limitations. The United States articulated this argument in its Motion to Dismiss, filed on January 27, 2017. *See* Dkt. No. 27. Understanding this Court's position, as articulated in its decision on that motion, the argument is not restated herein. This should not, however, be viewed as a waiver of the same.

[2] Hereinafter, "SMUF."

6.     The VA removed Wisner from patient care and placed him on Administrative Absence on May 19, 2014.  *See* Pretrial Order, Dkt. No. 49, p. 3, ¶¶ 2(a)(2), 2(a)(3).

7.     Wisner remained on Administrative Absence until June 28, 2014, when he voluntarily retired from the VA based on his eligibility under the laws at that time.  *See* Pretrial Order, Dkt No. 49, p. 3, ¶ 2(a)(1); Baker Dep. (Ex. C) at 21:22-22:3.

8.     On or about January 23, 2015, VA Office of Inspector General ("OIG") Special Agent Kerry Baker and Lt. Detective Joshua Patzwald of the Leavenworth County, Kansas Sheriff's Office, interviewed Wisner at Wisner's residence, and Wisner indicated that he crossed the professional line and was excessive in providing purported genital examinations.  *See* OIG Memo. of Interview, Jan. 23, 2015 (Ex. D) at 2.

9.     On or about January 23, 2015, during an interview with OIG Special Agent Baker and Lt. Detective Patzwald, Wisner indicated that he knew that what he was doing to his patients was wrong and that he had no self-control.  *See* OIG Memo. of Interview, Jan. 23, 2015 (Ex. D) at 2.

10.     On or about January 23, 2015, during an interview with OIG Special Agent Baker and Lt. Detective Patzwald, Wisner indicated that he provided genital examinations to his patients to satisfy his own curiosity.  *See* OIG Memo. of Interview, Jan. 23, 2015 (Ex. D) at 2.

11.     On or about January 23, 2015, during an interview with OIG Special Agent Baker and Lt. Detective Patzwald, Wisner indicated that all of his behavior was simply to satisfy his curiosity.  *See* OIG Memo. of Interview, Jan. 23, 2015 (Ex. D) at 2.

12.     On or about January 23, 2015, during an interview with OIG Special Agent Baker and Lt. Detective Patzwald, Wisner indicated that he performed genital "examinations" on his patients where they were not medically indicated or necessary, and that he did so for his own pleasure. *See* OIG Memo. of Interview, Jan. 23, 2015 (Ex. D) at 3.

13.     On or about January 23, 2015, during an interview with OIG Special Agent Baker and Lt. Detective Patzwald, Wisner acknowledged that he chose his victims, and that his victims were all attractive and of a similar body type. *See* OIG Memo. of Interview, Jan. 23, 2015 (Ex. D) at 3.

14.     Wisner admitted that he took actives steps in order to avoid getting caught, specifically, he falsified medical records, including by failing to document multiple genital examinations. *See* OIG Memo. of Interview, Jan. 23, 2015 (Ex. D) at 2-3; KSBHA Consent Order (Ex. E) ¶ 35; Am. Cmpl. (Dkt. No. 23) ¶ 31.

15.     Wisner "intentionally chose not to document all of his patient encounters in an effort to avoid detection." Pretrial Order, Dkt. No. 49, p. 17, ¶ 3(a) (Pl.'s Factual Contentions).

16.     On or about February 10, 2015, Wisner entered into a Consent Order with the Kansas State Board of Healing Arts wherein he surrendered his license to practice as a physician assistant. *See* Pretrial Order, Dkt. No. 49, p. 3, ¶ 2(a)(4); KSBHA Consent Order (Ex E) ¶ 53.

17.     In a Consent Order filed on or about February 10, 2015, Wisner admitted that he "used his position as a Physician Assistant at the Dwight D. Eisenhower VA Medical Center in Leavenworth, Kansas to commit sexual battery crimes against veteran

patients," to include Plaintiff.  KSBHA Consent Order (Ex. E) ¶ 11; Am. Cmpl. (Dkt. No. 23) ¶ 28.

18.     In a Consent Order filed on or about February 10, 2015, Wisner admitted that he "repeatedly sexually assaulted" his patients, "had inappropriate sexual contact" with his patients, and "made inappropriate sexual comments" to his patients.  KSBHA Consent Order (Ex. E) ¶ 33; Am. Cmpl. (Dkt. No. 23) ¶ 31.

19.     On or about May 21, 2015, Plaintiff gave a statement to OIG Special Agent Kerry Baker wherein Plaintiff stated that Wisner conducted a genital "exam" on Plaintiff at nearly every visit, despite Plaintiff never presenting with symptoms that would require such an exam.  *See* OIG Memo. of Interview, May 21, 2015 (Ex. F) at 4.

20.     On or about May 21, 2015, Plaintiff told Agent Baker that he was so uncomfortable with Wisner's demeanor that Plaintiff sometimes missed appointments.  *See* OIG Memo. of Interview, May 21, 2015 (Ex. F) at 4.

21.     On February 18, 2016, Plaintiff filed an administrative claim with the Department of Veterans Affairs, wherein he stated that he was "subject to several intentional and/or negligent sexual advances, assaults, and comments by Mark Wisner, PA."  *See* SF-95 (Ex. G) at 1; Pretrial Order, Dkt. No. 49, p. 7, ¶ 2(b)(13); Pl.'s Dep. (Ex. H) at 44:21-45:4.

22.     Plaintiff's administrative claim does not mention wrongful conduct by anyone other than Wisner.  *See* SF-95 (Ex. G).

23.     On September 13, 2016, Plaintiff filed the instant lawsuit, wherein he alleged that Wisner "wrongfully subject[ed] Plaintiff to inappropriate sexual comments and inappropriate physical examinations."  *See* Cmpl. (Dkt. No. 1) ¶ 17.

24.     Plaintiff filed the operative complaint on December 19, 2016, wherein he alleged that Wisner "conducted numerous genital examinations of Plaintiff without using medical gloves, repeatedly fondled John Doe A.L.'s genitals, and made inappropriate comments regarding John Doe A.L.'s penis." *See* Am. Cmpl. (Dkt. No. 23) ¶ 19.

25.     Plaintiff testified at his deposition that Wisner did things of a "sexual nature" to him that made him feel uncomfortable. *See* Pl.'s Dep. (Ex. H) at 44:21-45:4.

26.     Plaintiff testified at his deposition that Wisner conducted a genital exam on him at every visit. *See* Pl.'s Dep. (Ex. H) at 60:10-12.

27.     Wisner's "degrading" touching of Plaintiff's genitals was "consistent with [Wisner's] predatory history" and Wisner's "modus operandi." *See* Pretrial Order, Dkt No. 49, pp. 18-19, ¶ 3(a) (Pl.'s Factual Contentions).

28.     Wisner "sexually molested" Plaintiff. *See* Pretrial Order, Dkt. No. 49, p. 20, ¶ 3(a) (Pl.'s Factual Contentions).

29.     Wisner "sexual[ly] exploit[ed]" Plaintiff. *See* Pretrial Order, Dkt. No. 49, p. 21, ¶ 3(a) (Pl.'s Factual Contentions).

30.     Plaintiff believes Wisner "intentionally prescribed the opiates to him, and many other veterans, in an attempt to 'groom' them, weaken their defenses, cloud their judgment, and paint them as a 'drug addict' in the event any of them ever reported Wisner to the authorities." *See* Pretrial Order, Dkt. No. 49, p. 19, ¶ 3(a) (Pl.'s Factual Contentions).

31.     Wisner "manipulated their mutual military service to disarm [Plaintiff] so [Wisner] could use the genital exams to satisfy himself." *See* Pretrial Order, Dkt. No. 49, p. 20, ¶ 3(a) (Pl.'s Factual Contentions).

32. On August 30, 2017, a Leavenworth County Jury found Wisner guilty of aggravated criminal sodomy, aggravated sexual battery, and three other counts of sexual battery, stemming from Wisner's treatment of veteran patients at the VAMC. *See* Pretrial Order, Dkt. No. 49, p. 3, ¶ 2(a)(5).

33. As a result of the 2017 conviction, Wisner was sentenced to 15 years and seven months in prison, and he is currently imprisoned. *See* Pretrial Order, Dkt. No. 49, p. 3, ¶ 2(a)(6).

34. VHA Directive 2004-029, titled "Utilization of Physician Assistants (PAs)," was implemented on July 2, 2004, and remained in effect until December 2013. *See* VHA Dir. 2004-029 (Ex. I).

35. VHA Directive 1063, titled "Utilization of Physician Assistants (PAs)," was implemented on December 24, 2013, and rescinded and replaced VHA Directive 2004-029. *See* VHA Dir. 1063 (Ex. A).

36. VHA Directive 1063 was only in effect for one full annual quarter of Wisner's tenure treating patients at the VA. *See* VHA Dir. 1063 (Ex. A); Pretrial Order, Dkt. No. 49, p. 3, ¶¶ 2(a)(1)-2(a)(3).

37. VHA Directive 1063 refers to a quarterly "retrospective review of at least five randomly selected *patient encounter notes*," not a retrospective review of the entire medical record for five randomly selected patients. *See* VHA Dir. 1063 (Ex. A) at A-5 (emphasis added).

38. On October 17, 2017, during the plaintiffs' deposition of Special Agent Kerry Baker, Plaintiff's attorney Daniel Thomas asked Special Agent Baker, "You

interviewed over 100 patients who have made allegations regarding sexual impropriety against Mr. Wisner; is that fair?" *See* Baker Dep. (Ex. C) at 197:20-22.

39.    On October 17, 2017, during the plaintiffs' deposition of Special Agent Kerry Baker, Plaintiff's attorney Daniel Thomas asked Special Agent Baker, "You were focused, like we said, on the patient safety and if there was a sexual predator to get him removed from service and – and held accountable?" *See* Baker Dep. (Ex. C) at 204:8-11.

40.    On October 18, 2017, during the plaintiffs' deposition of Dr. Daniel Cline, Plaintiff's attorney Daniel Thomas asked Dr. Cline, "Do you know if this is the first time the Veterans Administration has dealt with a situation wherein a patient or patient population has made allegations of sexual impropriety against a healthcare practitioner?" *See* Cline Dep. (Ex. B) at 133:15-19.

41.    On October 19, 2017, during the plaintiffs' deposition of Michelle Lehman, Plaintiff's attorney Daniel Thomas asked Ms. Lehman, "Do you understand that, as a licensed social worker, protect- -- working in the state of Kansas, if you fail to report an allegation of sex abuse, it's a class B misdemeanor?" *See* Lehman Dep. (Ex. J) at 222:10-13.

42.    On October 23, 2017, during the plaintiffs' deposition of Dawn Clouse, Plaintiff's attorney Daniel Thomas clarified his question to Ms. Clouse by stating on the record, "I'm talking about all these men who came to you or you knew were making allegations that this pervert was molesting them." *See* Clouse Dep. (Ex. K) at 183:12-14.

43.    On January 25, 2018, during the plaintiffs' deposition of Richard Lawrenz, Plaintiff's attorney Daniel Thomas asked Mr. Lawrenz, "So what I'm saying is have you worked anywhere else as a VA employee, or an employee of the Department of Defense,

where over a hundred patients made allegations of sexual assault against the same person?" *See* Lawrenz Dep. (Ex. L) at 225:4-8.

44.     On January 25, 2018, during the plaintiffs' deposition of Richard Lawrenz, Plaintiff's attorney Daniel Thomas asked Mr. Lawrenz, "Whether you believe the allegations or not, there are a lot of men who have claimed that Mr. Wisner has done all kinds of sexual things to them.  You understand that, sir; right?"  *See* Lawrenz Dep. (Ex. L) at 235:6-9.

45.     On January 31, 2018, during the plaintiffs' deposition of Dr. Michael Leeson, Plaintiff's attorney Daniel Thomas asked Dr. Leeson, "Okay. Let me set the table a little bit for you so we have some parameters.  I represent in this group three plaintiffs who are former patients of Mr. Wisner, who have alleged that they were sexually molested or assaulted in some way.  Do you understand that?"  *See* Leeson Dep. (Ex. M) at 9:15-20.

46.     On January 31, 2018, during the plaintiffs' deposition of Dr. Michael Leeson, Plaintiff's attorney Daniel Thomas asked Dr. Leeson, "And each of the attorneys on this side of the table and one over there likewise represents a multitude of patients who have alleged sexual molestation or assault in some sort against Mr. Wisner; do you understand that?"  *See* Leeson Dep. (Ex. M) at 9:22-10:1.

47.     Plaintiff describes Wisner's conduct at issue in this lawsuit as "nefarious." *See* Pretrial Order, Dkt. No. 49, p. 21, ¶ 3(a) (Pl.'s Factual Contentions).

48.     Plaintiff submitted a report of Dr. Thomas Kelley to support his negligent supervision claim.  *See* Dr. Kelley Report (Ex. N).

49.     Dr. Kelley's report attributes Plaintiff's alleged harm to the VA's failure to remove Wisner from patient care at an earlier date.  *See* Dr. Kelley Report (Ex. N) at 7.

## LEGAL STANDARDS OF REVIEW

The United States moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To defeat a summary judgment motion, the plaintiff "may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried." *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980) (internal quotation marks omitted).

In ruling on a summary judgment motion, the district court draws "all reasonable inferences in favor of the nonmoving party." *Pioneer Centres Holding Co. Employee Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1334 (10th Cir. 2017). "But an inference is unreasonable if it requires 'a degree of speculation and conjecture that renders [the factfinder's] findings a guess or mere possibility.'" *Id.* (quoting *United States v. Bowen*, 527 F.3d 1065, 1076 (10th Cir. 2008)).

## ARGUMENT

I.     **ALL OF PLAINTIFF'S CLAIMS ARISE FROM WISNER'S INTENTIONAL, CRIMINAL CONDUCT AND THEREFORE ARE OUTSIDE THE SCOPE OF WISNER'S EMPLOYMENT AND BARRED BY THE INTENTIONAL TORT EXCEPTION TO THE FTCA**

There is no dispute that Mark Wisner was criminally charged and convicted for inappropriately touching his patients' genitals under the guise of medical care. SMUF ¶ 32. On February 18, 2016, Plaintiff submitted an administrative claim in which he alleged that, over the course of several years, Wisner repeatedly subjected him to "sexual

advances, assaults, and comments." SMUF ¶ 21.[3]  At his deposition, Plaintiff testified that Wisner performed a genital exam at every visit, SMUF ¶ 26, and that Wisner did things of a "sexual nature" that made him feel uncomfortable.  SMUF ¶ 25.

Wisner himself admitted that his actions were intentional and unrelated to medical care.  In a Consent Order with the Kansas State Board of Healing Arts, Wisner admitted that he used his position as a physician assistant to "commit sexual battery crimes against veteran patients," SMUF ¶ 17, and to "repeatedly sexually assault[ing his patients], hav[ing] inappropriate sexual contact [with his patients], [and] mak[ing] inappropriate sexual comments . . . [to his] patients."  SMUF ¶ 18.  Wisner later told Special Agent Kerry Baker of the VA Office of the Inspector General ("OIG") that he performed genital exams on his patients for which there was no medical need or indication, and that he did so for his own pleasure.  SMUF ¶ 12.  Wisner acknowledged "cho[o]s[ing] his victims" and taking "active steps" to hide what he was doing.  SMUF ¶¶ 13-15.

On May 21, 2015, Plaintiff gave a statement to Special Agent Baker from the VA OIG.  Plaintiff told Agent Baker that Wisner performed a genital examination at nearly every appointment, despite never having symptoms that would require such an exam. SMUF ¶ 19.  Plaintiff further told Agent Baker that he was so uncomfortable with Wisner's demeanor that he sometimes skipped appointments.  SMUF ¶ 20.

Despite the statements of Plaintiff himself and Wisner, in opposing the United States' Motion to Dismiss, Plaintiff argued that because Wisner, as a physician assistant, was authorized to perform genital examinations and to make inquiries about sexual history,

---

[3] At his deposition, Plaintiff acknowledged that the statements and characterizations of Wisner's behavior as described in the administrative claim are accurate. *See* SMUF ¶ 21; Pl.'s Dep. (Ex. H) at 44:21-45:4.

any touching of Plaintiff's genitals and any comments about Plaintiff's sexual history must fall within Wisner's scope of employment. *See* Pl.'s Opp'n (Dkt. No. 37) at 8-9. In other words, according to Plaintiff, any touching, regardless of propriety, necessity, or motivation should fall within the scope of employment. This is false and misleading. The VA hired Wisner to perform physical examinations, including the touching of genitals, *when such examinations were medically indicated*. The VA *did not* hire Wisner to touch his patients for his own sexual gratification. In the absence of a clinical indication, Wisner should not have been acting. According to Plaintiff's logic, any touching, under any circumstance, driven by any motivation, by a medical provider would fall within that provider's scope of employment. Moreover, Plaintiff argued, "[a]ll doctors make mistakes," *id.* at 9, and that Wisner's touching of and comments to Plaintiff constituted a "medical exam that fell beneath the standard of care." *Id.* According to Plaintiff, "[o]ne need not view Wisner's acts as 'sexual' at all," *id.* at 10, and "[t]his is not a sexual harassment case." *Id.* at 12.

Ultimately, Plaintiff told this Court that Wisner's actions were not sexual assault, but instead amounted only to "mistakes" and "immaterial deviations" from otherwise acceptable behavior. In allowing Plaintiff's claims to proceed beyond the United States' Motion to Dismiss, the Court found that Plaintiff, at the motion to dismiss stage, had presented a plausible negligence claim that is supported by facts consistent with allegations in the complaint. *See* Mem. and Order (Dkt. No. 40) at 7.

Plaintiff's claims cannot, however, survive the United States' current motion. The above referenced statements by Plaintiff and Wisner, are, standing alone, sufficient to doom Plaintiff's claims at the summary judgment stage. Plaintiff's deposition testimony

and contentions of fact submitted in the Pretrial Order, which post-date the United States' Motion to Dismiss, erased any doubt that Plaintiff's claims are based upon sexual assault. Moreover, subsequent to the Court's Order on the United States' Motion to Dismiss, Plaintiff's own counsel repeatedly described Mr. Wisner's actions as sexual assault.

For example, at the deposition of Dr. Daniel Cline, Wisner's immediate supervisor for much of his tenure at the VA, Plaintiff's counsel asked, "Do you know if this is the first time the Veterans Administration has dealt with a situation wherein a patient or patient population has made allegations of sexual impropriety against a healthcare practitioner?" SMUF ¶ 40. Plaintiff's counsel asked Richard Lawrenz, the former Patient Advocate at the Leavenworth VA, "So what I'm saying is have you worked anywhere else as a VA employee, or an employee of the Department of Defense, where over a hundred patients made allegations of sexual assault against the same person?," SMUF ¶ 43, "Whether you believe the allegations or not, there are a lot of men who have claimed that Mr. Wisner has done all kinds of sexual things to them. You understand that, sir; right?" SMUF ¶ 44. Plaintiff's counsel asked Michelle Lehman, one of the social workers at the VA Medical Center, "Do you understand that, as a licensed social worker, protec – working in the state of Kansas, if you fail to report an allegation of sex abuse, it's a Class B misdemeanor?" SMUF ¶ 41. Plaintiff's counsel asked Agent Baker, who led the investigation into the allegations against Wisner for VA OIG, "You interviewed over 100 patients who have made allegations regarding sexual impropriety against Mr. Wisner; is that fair?" SMUF ¶ 38, and, "You were focused, like we said, on the patient safety and if there was a sexual predator to get him removed from service and – and held accountable?" SMUF ¶ 39. And, perhaps most notably, Plaintiff's counsel clearly stated during the deposition of VA witness

Dr. Michael Leeson that he "represent[s] in this group three plaintiffs who are former patients of Mr. Wisner, who have alleged that they were sexually molested or assaulted in some way," SMUF ¶ 45, and that the other plaintiffs' attorneys involved in this litigation "likewise represent[] a multitude of patients who have alleged sexual molestation or assault in some sort against Mr. Wisner." SMUF ¶ 46.

Most recently, Plaintiff submitted his factual contentions of the case in the Pretrial Order. *See generally* Pretrial Order, Dkt. No. 49, pp. 14-22, ¶ 3(a) (Pl.'s Factual Contentions). Throughout, Plaintiff describes, not negligently provided, sub-standard medical care, but overtly sexual criminal behavior. Plaintiff references Wisner's "predatory history," *id.* at p. 18, and describes the behavior at issue in this lawsuit as "nefarious." *Id.* at p. 21. He refers to Wisner's "*modus operandi.*" *Id.* at p. 19. Plaintiff claims Wisner "sexually molested" and "sexual[ly] exploited" him. SMUF ¶¶ 28-29. Plaintiff believes "that Wisner intentionally prescribed opiates to him, and many other veterans, in an attempt to 'groom' them, weaken their defenses, cloud their judgment, and paint them as a 'drug addict' in the even any of them ever reported Wisner to the authorities." SMUF ¶ 30. Finally, and perhaps most tellingly, Plaintiff contends that Wisner "manipulated their mutual service to disarm [Plaintiff] so [Wisner] could use the genital exams to satisfy himself." SMUF ¶ 31.

Try as Plaintiff might, he simply cannot ignore his own statements, those of Wisner, those made by Plaintiff's own counsel at deposition, and those submitted by Plaintiff's counsel as contentions of fact based upon two years of discovery. Repeated instances of sexual assault and exploitation are not "mistakes," nor are they *in any way* related to the provision of medical care. Wisner's touching of Plaintiff was committed without any

clinical or medical justification, and was done to satisfy Wisner's own personal interest. As such, there can be no argument that he was acting within the scope of his employment. Nor can Plaintiff prove that Wisner was not acting intentionally. Therefore, Defendant's motion for summary judgment must be granted.

### a. WISNER WAS NOT ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT

The FTCA's limited waiver of sovereign immunity applies only to the injuries caused by the wrongful acts or omissions of government employees "acting within the scope of his or her office of employment." 28 U.S.C. § 1346(b); *Smith v. United States*, 561 F.3d 1090 (10th Cir. 2009).

To determine whether an employee was acting within the scope of his employment, a court looks to the law of the place where the incident occurred. *See Fowler v. United States*, 647 F.3d 1232, 1237 (10th Cir. 2011). In Kansas, "[a]n employee is acting within the scope of his employment when he is performing services for which he has been employed, or when he is doing anything which is reasonably incidental to his employment." *O'Shea v. Welch*, 350 F.3d 1101, 1103 (10th Cir. 2003) (quoting Pattern Instructions Kansas 3d 107.06). Although a "mere deviation from the strict course of his duty" does not release the employer from liability, an employee ceases to be acting within the scope of employment when the deviation is "so substantial as to amount to an entire departure." *Id.* (quoting *Kruse v. White Bros.*, 253 P. 178, 181 (Cal. Ct. App. 1927)). An employee "pursuing a business errand and a personal objective simultaneously" will still be acting within the scope of employment, *id.* at 1108 (quoting *Felix v. Asai*, 192 Cal. App. 3d 926, 237 Cal. Rptr. 718 (Ct. App. 1987)), so long as "his *main purpose* is still to carry on the business of his employer." *Id.* at 1107 (quoting *De Mirjian v. Ideal Heating Corp.*,

278 P.2d 114, 118 (Cal. Ct. App. 1954)) (emphasis added). Under the slight deviation analysis, "deviations which do not amount to a turning aside completely from the employer's business, *so as to be inconsistent with its pursuit*, are often reasonably expected and the *employer's assent may be fairly assumed*." *Id*. (emphasis added).

To determine "whether an employee embarked on a slight or substantial deviation," courts look to several factors: "(1) the employee's intent; (2) the nature, time, and place of the deviation; (3) the time consumed in the deviation; (4) the work for which the employee was hired; (5) the incidental acts reasonably expected by the employer; and (6) the freedom allowed the employee in performing his job responsibilities." *Id.* at 1108. Plaintiff claims that at every appointment he had with Wisner he was assaulted and subjected to sexual comments and sexual exploitation. SMUF ¶¶ 24, 26-28. Wisner himself has admitted that these "exams" served no medical purpose and that he was acting simply to satisfy his own curiosities. SMUF ¶¶ 10-12. Wisner further admitted to Agent Baker that he took active steps to avoid discovery and that he knew what he was doing was wrong. SMUF ¶¶ 9, 14-15. The record makes clear that Wisner was not acting within the scope of his employment.

Wisner was employed by the VA as a PA. A general outline of a PA's scope of practice is contained in VHA Directive 1063. In short, a PA is employed to administer basic medical care and screening to veteran patients. SMUF ¶ 2. Such medical care and screening included performing genital examinations *when they were medically indicated* and asking questions concerning a patient's sexual history. Here, Plaintiff has insisted and Wisner has admitted that the exams in question served no medical purpose and were entirely unnecessary.

Wisner's deliberate behavior cannot be considered "reasonably incidental" to Wisner's employment, nor can it be considered a "slight deviation." As the *O'Shea* court noted, a deviation cannot be considered "slight" when it amounts to a "turning aside completely from the employer's business, so as to be *inconsistent with its pursuit*." *O'Shea*, 350 F.3d at 1107 (emphasis added). The record is clear that Wisner's intention in performing the exams was not in furtherance of the VA's mission of providing medical care to veterans. The exams were not medically indicated and instead were performed to satisfy Wisner's own curiosity. SMUF ¶¶ 10-12. Not only were Wisner's actions outside of his scope of employment, they were in explicit contravention of it.

That these assaults occurred in a VA hospital under the guise of a medical examination is immaterial. In *Bodin v. Vagshenian*, 462 F.3d 481 (5th Cir. 2006), the Fifth Circuit held that a VA physician's inappropriate and unnecessary examination of plaintiff's genitalia was outside the scope of his employment because the physician's personal desire motivated the assaults. *See id.* at 486-87. The Court noted that "an employer will not be held liable as a matter of law merely because the employment situation provided the opportunity for the servant's wrongful acts or the means to carry them out." *Id.* (internal quotations omitted).[4]

---

[4] *See also Barsamian v. City of Kingsberg*, 597 F. Supp. 2d 1054, 1068 (E.D. Cal. 2009) ("That the employment brought the tortfeasor and victim together in time and place is not enough."); *Smith v. United States Department of Veteran's Affairs*, 2009 U.S. Dist. LEXIS 11438, *8-13 (S.D. Miss. Feb. 13, 2009) (collecting cases); *Perry v. City of Fresno*, 215 Cal. App. 4th 94, 102 (Cal. Ct. App. 2013), *as modified on denial of reh'g* (Apr. 26, 2013) ("The mere fact that an employee has an opportunity to abuse facilities or authority necessary to the performance of that employee's duties does not render the employer vicariously liable.").

In the instant case, as in *Bodin*, Wisner's position at the VA merely provided him the means to commit the alleged assaults. Plaintiff here has not and cannot demonstrate that Wisner's "tortious conduct was motivated to an appreciable extent by the VA's purposes," *Bodin*, 462 F.3d at 487, nor can he plausibly claim that Wisner was acting with "mixed motives," *see Williams v. Cmty. Drive-In Theater, Inc.*, 214 Kan. 359, 520 P.2d 1296, 1301-02 (1974), when he performed the "exams" in question. At issue here is not the proper, necessary, and appropriate care that was provided by Wisner. Rather, Plaintiff alleges harm stemming from "exams" that were not medically indicated, were unnecessary, which were performed solely for Wisner's own gratification, and which amounted to sexual assault and battery.

Although Plaintiff purports to bring negligence claims based upon Wisner's behavior, the record makes clear that Wisner was not merely acting negligently. Wisner's repeated sexual assaults and sexual comments made to Plaintiff were not "mistakes." Nor can they be considered "slight deviations" from his scope of employment.

As the record indicates, there was no medical indication for the "exams" given by Wisner. There was no clinical indication or justification for his touching of Plaintiff's genitals. SMUF ¶ 19; *see also* Pretrial Order, Dkt. No. 49, p. 19, ¶ 3(a) (Pl.'s Factual Contentions) ("During each one of these visits, PA Wisner inexplicably conducted a genital examination even though Plaintiff's medical history did not merit such an exam."). Rather, Wisner conducted these "exams" to satisfy his own curiosity and for his own gratification. SMUF ¶¶ 10-12. Wisner knew what he was doing was wrong, and he took active steps to conceal his behavior. SMUF ¶¶ 9, 14-15. Plaintiff himself has characterized Wisner's conduct as "nefarious." SMUF ¶ 47. Under Kansas law, an employer cannot be held

vicariously liable for an employee's intentional torts when the employee "is motivated entirely by personal reasons such as malice or spite or by a desire to accomplish some unlawful purpose." *Williams*, 214 Kan. at 366. Kansas law defines "malice" as "'evil-mindedness or specific intent to injure' or as a state of mind characterized by an *intent to do a harmful act* without reasonable justification or excuse." *Garcia v. Tyson Foods, Inc.*, 890 F. Supp. 2d 1266, 1273 (D. Kan. 2012) (quoting *Turner v. Haliburton Co.*, 240 Kan. 1, 8 (1986)) (emphasis added). Generally, an allegation of malice is inconsistent with the scope of employment. *See id.* (citing *Williams*, 214 Kan. at 359) ("if … an employee is motivated entirely by personal reasons such as malice or spite or by a *desire to accomplish some unlawful purpose* and does not have for its purpose the furtherance of the employer's business, it will be considered personal to the employee.") (emphasis added)).

There can be no doubt that Wisner's repeated sexual assault of Plaintiff, as well as his repeated sexual comments, were outside of his scope of employment. Wisner acted without medical justification and solely to satisfy his own interests. His abuse of Plaintiff was personal, and there can be no argument that his actions were in furtherance of the VA's business. As such, any claim for which Plaintiff seeks to hold the United States vicariously liable for Wisner's conduct fails.

### b. REGARDLESS OF WHETHER WISNER WAS ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT, SECTION 2680(H) BARS PLAINTIFF'S CLAIMS

Congress specifically provided that the FTCA "shall not apply to . . . [a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights . . . ." 28 U.S.C. § 2680(h). Battery is traditionally defined as any harmful or offensive contact resulting from an act intended to cause such contact. *See* Restatement

(Second) of Torts §§ 13 and 18. In determining the applicability of the intentional tort exception, "a court must look, not to the theory upon which the plaintiff elects to proceed, but rather to the substance of the claim which he asserts." *Lambertson v. United States*, 528 F.2d 441, 443 (2d Cir. 1976). "A plaintiff cannot escape a § 2680(h) exception merely by labeling a cause of action as something which it is not." *Hernandez v. United States*, 465 F. Supp. 1071, 1073 (D. Kan. 1979); *see also Alaniz v. United States*, 257 F.2d 108 (10th Cir. 1958) (declining to exercise jurisdiction over a claim that, although pled as negligence, was in fact one for battery and wrongful death).

Here, Plaintiff claims that at every visit, Wisner performed a genital exam, despite the fact that Plaintiff never presented with symptoms that would require such an exam. *See* SMUF ¶¶ 19, 26; *see also* Pretrial Order, Dkt. No. 49, p. 19, ¶ 3(a) (Pl.'s Factual Contentions) ("During each one of these visits, PA Wisner inexplicably conducted a genital examination even though Plaintiff's medical history did not merit such an exam."). Plaintiff claims that Wisner did things of a sexual nature that made him so uncomfortable that he sometimes skipped appointments. SMUF ¶¶ 20, 29. Wisner himself has admitted that these "exams" were not medically indicated, and that he performed them to satisfy his own curiosity and for his own pleasure. SMUF ¶¶ 10-12. Knowing that it was wrong, Wisner took affirmative steps to hide his actions. SMUF ¶¶ 9, 14-15. This behavior, undoubtedly, was intentional, notwithstanding Plaintiff's attempts to couch it as negligence. *See, e.g.*, *Naisbitt v. United States*, 611 F.2d 1350, 1355-56 (10th Cir. 1980) (holding that a mere allegation of negligence does not turn an intentional tort into negligent conduct); *Wine v. United States*, 705 F.2d 366, 367 (10th Cir. 1983) (same). Thus, even

assuming for the sake of argument, that Wisner was acting within the scope of his employment, Plaintiff's claims based on his conduct are barred by § 2680(h).

This is true not only for claims based upon Wisner's battery (to include Plaintiff's outrage claim), but also for claims of negligent supervision. "Section 2680(h) does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery." *Franklin v. United States*, 992 F.2d 1492, 1498 (10th Cir. 1993) (emphasis in original); *see also Olsen v. U.S. ex rel. Dep't of the Army*, 144 F. App'x 727 (10th Cir. 2005) (holding that even if an employee was acting within the scope of his employment at the time of the assault, the FTCA's intentional tort exception bars plaintiff from imposing liability on the United States based on a *respondeat superior* theory of liability). "Causes of action distinct from those excepted under § 2680(h) are nevertheless deemed to be barred when the underlying government conduct 'essential' to the plaintiff's claim can fairly be read to 'arise out of' conduct that would establish an excepted cause of action." *Leleux v. United States*, 178 F.3d 750, 756 (5th Cir. 1999); *accord Zelaya v. United States*, 781 F.3d 1315, 1333 (11th Cir. 2015). *See also Stepp v. United States*, 207 F.2d 909, 911 (4th Cir. 1953); *Ferran v. United States*, 144 F. Supp. 652, 655 (D.P.R. 1956).

For the reasons discussed above, there can be no argument that Wisner's behavior was not intentional. Plaintiff's allegations of negligent supervision stem directly from Wisner's intentional conduct. Plaintiff has not and cannot present any evidence to the contrary. Because § 2680(h) excepts not only the battery, but also any claims arising from the battery, the United States' motion for summary judgment on all of Plaintiff's claims must be granted.

Plaintiff cannot derive any solace from *Sheridan v. United States*, 487 U.S. 392 (1988). There, the Supreme Court clarified that § 2680(h) does not bar negligence claims related to an assault or battery committed by a government employee if the government has breached an affirmative duty that is "entirely independent of [the tortfeasor's] employment status," such that "the employment status of the assailant has nothing to do with the basis for imposing liability on the government." *Id.* at 401-02. In other words, negligence claims related to a government employee's assault and battery are barred by § 2680(h) unless the claimed "negligence arose out of an independent, antecedent duty unrelated to the employment relationship between the tortfeasor and the United States." *Olsen*, 144 Fed. App'x at 733 (internal quotations and citations omitted); *see also Franklin*, 992 F.2d at 1498. Here, Plaintiff's supervision claim against the United States is barred by § 2680(h) because it stems from batteries committed by Wisner, and hinges on Wisner's federal employment status. Claims of negligent training – as well as negligent supervision, hiring, and retention – are, by their very nature, dependent on the existence of an employment relationship; the government's liability arises, if at all, only because the assailant happens to be a federal employee. *See Sheridan*, 487 U.S. at 406-07.

Finally, Plaintiff cannot save his claims by invoking the VA Immunity Statute (*see* 38 U.S.C. § 7316). Under certain circumstances, the Statute applies the remedies available against the United States under the FTCA to damages arising from the provision of medical services by health care employees of the VA. *See Franklin*, 992 F.2d at 1502; *Ingram v. Faruque*, 728 F.3d 1239, 1246 (10th Cir. 2013) (citing 38 U.S.C. § 7316(a)(1)). Section 7316(f) states:

> The exception provided in section 2680(h) of
> title 28 shall not apply to any claim arising

> out of a negligent or wrongful act or omission of any person described in subsection (a) in furnishing medical care or treatment . . . while in the exercises of such person's duties for the administration.

38 U.S.C. § 7316(f). In other words, the intentional tort exception set forth in § 2680(h) does not apply to claims of medical battery. *See Franklin*, 992 F.2d at 1502.

As the Tenth Circuit noted in *Franklin*, prior to the enactment of the statute, "[i]n some instances, State law characterize[d] an act of medical malpractice as an intentional tort, leaving VA medical personnel potentially liable for an action for which the law intends the Government to assume liability." *Id.* at 1500. By enacting the so-called Immunity Statute, Congress intended to extend immunity to VA medical professionals for conduct, performed incident to medical care and within scope of their employment, even if, in some cases, that conduct might be considered a battery. *Franklin* and its progeny have made clear that the intent of the statute was to expand coverage to medical personnel, not to cut back on the scope of the exceptions articulated in § 2680(h). *See, e.g., id.* at 1502.

As discussed in Section I(a), *supra*, Wisner was clearly not acting within the scope of his employment when he assaulted, battered, exploited, and solicited Plaintiff. Even setting that argument aside, Wisner's inappropriate and medically unnecessary touching of Plaintiff was not related or incidental to medical treatment Plaintiff was receiving. In point of fact, Wisner admitted that these "exams" were done to satisfy his own curiosity and his own pleasure. This is clearly not the type of conduct Congress intended to immunize. As such, these actions fall within the purview of § 2680(h), and the court lacks subject matter jurisdiction over the same.

## II. PLAINTIFF'S "NEGLIGENT SUPERVISION" CLAIM FAILS BECAUSE IT WAS NOT PROPERLY PRESENTED IN HIS ADMINISTRATIVE CLAIM AND BECAUSE IT IS BARRED BY THE DISCRETIONARY FUNCTION EXCEPTION

### a. PLAINTIFF'S "NEGLIGENT SUPERVISION" CLAIM WAS NOT PROPERLY PRESENTED

Plaintiff has failed to exhaust a claim for negligent supervision. The United States retains its sovereign immunity for claims that have not been properly presented to an agency. *See* 28 U.S.C. § 2675(a). "A claim is properly presented to an agency only if the language of the claim 'serves due notice that the agency should investigate the possibility of particular (potentially tortious) conduct.'" *Barnes v. United States*, 707 F. App'x 512, 516 (10th Cir. 2017) (quoting *Staggs v. U.S. ex rel. Dep't of Health & Human Servs.*, 425 F.3d 881, 884 (10th Cir. 2005)); *see also Bradley v. U.S. ex rel. Veterans Admin.*, 951 F.2d 268, 270 (10th Cir. 1991) (the FTCA "requires that claims for damages against the government be presented to the appropriate federal agency by filing . . . a written statement sufficiently describing the injury to enable the agency to begin its own investigation.") (internal quotation marks omitted).

A plaintiff has not exhausted a claim for negligent supervision when the administrative claim fails to mention inadequate supervision. *See Kikumura v. Osagie*, 461 F.3d 1269, 1301-02 (10th Cir. 2006) (overruled on other grounds) (holding that plaintiff failed to exhaust claims for negligent supervision and negligent training because plaintiff's administrative claim "fail[ed] to mention the possibility that his injuries were caused by the inadequate training and supervision of ADX staff."); *Barnes*, 707 F. App'x at 516 (10th Cir. 2017) (affirming dismissal of plaintiff's negligent supervision and training claims for failure to exhaust because plaintiff's "administrative claim lacks even a cursory mention of ATF training or supervision" and "[t]he claim provides no notice of

any wrongdoing by any federal officer other than McFadden."); *Wilson v. United States*, No. CIV-17-528-R, 2018 WL 794711 (W.D. Okla. Feb. 8, 2018); *see also Lopez v. United States*, 823 F.3d 970, 975-77 (10th Cir. 2016) (administrative claim, which alleged two doctors provided substandard medical care during a surgical procedure, did not provide sufficient notice of plaintiff's negligent credentialing and privileging claim); *Mark v. United States*, 224 F. Supp. 3d 1207, 1212 (D.N.M. 2016) ("When an executive branch is presented with an administrative claim that—fairly read—centers entirely around the specific medical care rendered by specific personnel to a specific patient, *Lopez* forecloses the argument that such a claim implicitly encompasses ancillary claims having to do with how and why their employer hired, credentialed, trained, supervised, or staffed its personnel.").

Because Plaintiff's administrative claim makes no mention of the supervision of Wisner, SMUF ¶¶ 21-22, his claim for negligent supervision is not properly exhausted and must be dismissed for lack of subject-matter jurisdiction. Plaintiff's administrative claim provides no notice of any possibility that Plaintiff's alleged injury was caused by anyone other than Wisner.

### b. Plaintiff's "Negligent Supervision" Claim is Barred by the Discretionary Function Exception

The United States' limited waiver of sovereign immunity found in the FTCA does not extend to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion is abused." 28 U.S.C. § 2680(a); *see also Domme v. United States*, 61 F.3d 787, 788 (10th Cir. 1995) ("If the discretionary function exception applies to the challenged conduct, the United States retains its sovereign

immunity and the district court lacks subject matter jurisdiction to hear the suit."). The discretionary function exception is strictly construed in the United States' favor, *see U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992), and the plaintiff bears the burden of proving the discretionary function exception does not apply. *See Hardscrabble Ranch, LLC v. United States*, 840 F.3d 1216, 1220 (10th Cir. 2016). Here, discovery has confirmed that Plaintiff's alleged harm was caused by conduct protected by the discretionary function exception.

The Supreme Court set forth a two-part test for determining whether the discretionary function exception applies. *See Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988). First, the challenged conduct must be "a matter of choice for the acting employee." *Id.* at 536. To overcome this prong, the plaintiff must identify a "federal statute, regulation, or policy" that specifically prescribes a course of action, leaving "the employee [ ] no rightful option but to adhere to the directive." *Id.* Second, the discretionary conduct must be the kind the exception was "designed to shield," that is, the conduct must be "based on considerations of public policy." *Id.* at 537. The question of negligence is irrelevant to the *Berkovitz* analysis. *See Aragon v. United States*, 146 F.3d 819, 822 (10th Cir. 1998) ("The [discretionary function] exception applies even if the governmental employees were negligent.").

Before applying the *Berkovitz* framework, the court must carefully define the harm-causing conduct. *See Sydnes v. United States*, 523 F.3d 1179, 1183 (10th Cir. 2008); *see also Mahon v. United States*, 742 F.3d 11, 14 (1st Cir. 2014) (in determining whether the discretionary function exception applies, "[a] court must first zero in on the conduct that supposedly caused the harm."); *Rosebush v. United States*, 119 F.3d 438,

441 (6th Cir. 1997) ("[T]he crucial first step is to determine exactly what conduct is at issue.").  Careful definition of the harm-causing conduct is critical because a plaintiff cannot avoid the discretionary function exception where the mandatory directive to which they point does not prescribe specific conduct that would have prevented the alleged harm.  *Sanchez ex rel. D.R.S. v. United States*, 671 F.3d 86, 97 (1st Cir. 2012) ("It is not sufficient for a plaintiff to identify a statute, regulation, or policy that contains mandatory directives; directives must be directly applicable to the challenged conduct.").  Furthermore, the discretionary function exception applies when a discretionary decision intervenes between alleged nondiscretionary conduct and the plaintiff's alleged injury.  *See Johnson v. U.S. Dep't of Interior*, 949 F.2d 332 (10th Cir. 1991); *Clark v. United States*, 695 F. App'x 378 (10th Cir. 2017); *Gen. Dynamics Corp. v. United States*, 139 F.3d 1280, 1285 (9th Cir. 1998) ("[W]e cannot wholly ignore causation concepts when a robust exercise of discretion intervenes between an alleged government wrongdoer and the harm suffered by a plaintiff.").

Here, the alleged harm-causing conduct was the VA's disciplinary decisions, or alleged lack thereof, with respect to Wisner.  Specifically, Plaintiff alleges the VA should have counseled Wisner,[5] and should have removed him from patient care.  *See* SMUF ¶¶ 48-49; Dr. Kelley Report (Ex. N) at 7 ("[T]he Veterans Administration deviated from the standard of care when it failed to prohibit Mr. Wisner from providing patient care by March of 2012. . . . Had the Veterans Administration met the standard of care . . . Mr.

---

[5] Plaintiff's expert report acknowledges that Wisner's supervisor did, in fact, counsel Wisner, but such counseling proved ineffective.  *See* Dr. Kelley Report (Ex. N), at 6.  Therefore, Plaintiff's own expert recognizes that the true cause of Plaintiff's harm was not the VA's alleged failure to counsel Wisner, but rather, the VA's failure to remove Wisner from patient care.  SMUF ¶ 49.

Wisner would have been appropriately prohibited from treating [John Doe A.L.] when he presented at the VA medical center."). The discretionary function exception bars a claim based upon this alleged conduct.

The VA's disciplinary decisions with respect to Wisner satisfy step one of the *Berkovitz* framework, as disciplinary decisions are a matter of discretion. Plaintiff cannot identify a federal statute, regulation, or policy that mandates a specific course of action regarding the VA's discipline of its employees. Indeed, the only potentially relevant policies confirm that the VA retains discretion regarding the discipline of its PAs. *See* VHA Dir. 2004-029 (Ex. I) at A-2 ("The Chief of Staff (COS) is responsible for seeing that such reviews are conducted and for assuring that clinical service chiefs take *appropriate action* to correct discovered deficiencies.") (emphasis added); VHA Dir. 1063 (Ex. A) at A-7 ("The Chief of Staff is responsible for ensuring that reviews are conducted and *action* is taken to correct any discovered deficiencies.") (emphasis added). The policies do not prescribe a specific manner in which to respond to discovered deficiencies. Instead, the supervisor uses their discretion to decide the appropriate remedial action.

Step two of the *Berkovitz* framework is also satisfied, as personnel decisions, including the discipline of employees, are precisely the kind of policy judgments the discretionary function exception was intended to encompass. *See Sydnes*, 523 F.3d at 1186. Accordingly, Plaintiff's claim is barred by the discretionary function exception, and must be dismissed for lack of subject-matter jurisdiction.

To be sure, Plaintiff's purported negligent supervision claim facially survived the United States' Motion to Dismiss by relying on requirements in VHA Directives 2004-

029 and 1063 regarding the manner in which to review a PA's performance (i.e., a quarterly retrospective review of five randomly selected patient encounter notes). But while Plaintiff's reliance on mandatory language in VA Directives allowed him to survive a facial challenge early in this litigation, those Directives get him no further. Common sense dictates, and two years of discovery confirms, that the failure to conduct a retrospective review of five randomly selected patient encounter notes in one quarter was not the conduct that caused Plaintiff's alleged harm. [6] And indeed, how could it be? Even assuming, preposterously, that Wisner's supervisor determined, through a retrospective review of five patient encounter notes randomly selected from the 750-1000 patients he treated, that Wisner was performing inappropriate genital examinations, [7] that determination alone would not prevent Plaintiff's alleged harm. Instead, to prevent Plaintiff's alleged harm, some form of corrective action would need to be taken in response. And as detailed above, the decision regarding the type of corrective action to take[8] is protected by the discretionary function exception.

---

[6] It is unsurprising that Plaintiff's expert does not attempt to make this connection. Wisner served as a primary care provider for 750 to 1000 patients at the VA. SMUF ¶ 3. He admitted that he falsified records. SMUF ¶¶ 14-15. That five randomly selected patient encounter notes (which, of course, is not the same as an entire medical record, SMUF ¶ 37) would reveal Wisner was performing inappropriate genital examinations is wholly unsupported and contrary to common sense.

[7] Because this inference "requires 'a degree of speculation and conjecture that renders [the factfinder's] findings a guess or mere possibility,'" *Pioneer Centres Holding Co.*, 858 F.3d at 1334 (quoting *Bowen*, 527 F.3d at 1076), it is not drawn in Plaintiff's favor.

[8] To the extent Plaintiff argues the VA did not have discretion *not* to take corrective action, Plaintiff fundamentally misunderstands the discretionary function exception. The exception protects not only the performance of discretionary decisions, but also "the *failure* to exercise or perform a discretionary function or duty." 28 U.S.C. § 2680(a) (emphasis added).

The same can be said for the language in Directive 1063 providing that the supervisor and the PA "will be in contact at least weekly to discuss any difficult or unusual clinical management issues." *See* VHA Dir. 1063 (Ex. A) at A-5. Initially, the discussion contemplated in this section is conditioned upon the existence of a "difficult or unusual clinical management issue[]." Absent such issues, weekly discussion is unnecessary. *See id.* (The PA "requires infrequent consultation with the collaborating physician."). That Plaintiff's expert report does not even contemplate these discussions, let alone critique their alleged absence, is telling. Nonetheless, even assuming such discussions were necessary, and assuming, again preposterously, that Wisner's supervisor determined—through a conversation with Wisner himself—that Wisner was performing inappropriate genital examinations,[9] that determination alone would not prevent Plaintiff's alleged injuries. Instead, a subsequent discretionary act—namely, some form of corrective action—would need to occur to prevent Plaintiff's alleged harm.

Similarly, the biennial "structured review" prescribed in VHA Directive 2004-029 was not conduct that could have prevented Plaintiff's alleged harm. Again, Plaintiff's expert does not opine that Plaintiff's alleged injuries were caused by a failure to conduct the biennial "structured review" prescribed in the policy. Plaintiff cannot establish that that this "structured review" would have prevented his injuries.[10] At best, the "structured review" might have revealed deficiencies in Wisner's performance. (Plaintiff, however, does not establish what the prescribed review would have discovered, or how.) But even assuming deficiencies were discovered, that discovery would not have prevented

---

[9] *See* n.7, *supra.*

[10] *See* n.7, *supra.*

Plaintiff's alleged harm. Instead, intervening discretionary conduct—namely, the corrective action taken in response to discovered deficiencies—necessarily separates the "structured review" prescribed by VHA Directive 2004-029 and Plaintiff's alleged harm.[11]

Moreover, Plaintiff's attempt to use language in VHA Directives 1063 and 2004-029 to circumvent the discretionary function exception mirrors the tactic specifically rejected in *Clark*, 695 F. App'x 378. The plaintiffs in *Clark* sustained serious injuries while sledding in a snow play area operated by the National Forest Service. They sought to recover for their injuries under the FTCA by alleging, inter alia, that the Forest Service was negligent in creating and maintaining the unsafe conditions in the snow play area. Plaintiffs attempted to circumvent the discretionary function exception by pointing to the Forest Service Manual, which required the Forest Service to annually inspect its recreational sites and maintain a public record of the inspections. However, the Court determined that this directive did not allow plaintiffs to avoid the discretionary function exception because plaintiffs failed to establish that the Forest Service's failure to conduct

---

[11] Plaintiff's expert's vague reference to alleged systematic failures regarding centralized dissemination of information is simply a red-herring. Such a claim is barred by the misrepresentation exception to the FTCA. *See* 28 U.S.C. § 2680(h); *Block v. Neal*, 460 U.S. 289, 297 (1983) ("[T]he essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation on which the recipient relies."); *Muniz-Rivera v. United States*, 326 F.3d 8, 13 (1st Cir. 2003) (The FTCA's misrepresentation exception "extends to a wide range of communicative activity (including failures of communication)."). Moreover, such a claim is further barred by the discretionary function exception. As explained herein, *infra*, even if Plaintiff could identify a federal policy dictating specific steps that must be taken to disseminate information (to include police reports) regarding a PA, such communication cannot be isolated from the ultimate discretionary decision regarding the action to take in response to information. This was precisely the holding in *Johnson*, 949 F.2d at 339 ("The gathering of information from an individual reporting a potential problem and the communication between rangers is inextricably tied to the rescue decision.").

an annual inspection of the snow play area caused their injuries. Instead, the Court determined that plaintiffs' injuries were allegedly caused by the Forest Service's failure to remediate the dangerous conditions, and there was no mandatory policy or regulation prescribing specific remediation efforts the Forest Service had to undertake. *See id.* at 386 ("Even if the inspections might have revealed dangerous conditions, as the district court explained the Plaintiffs have identified only a *discretionary* duty or function to determine specifically how to remediate those specific conditions and thereby potentially avert their injuries.") (emphasis in original).[12]

Here, the reviews prescribed by VHA Directives 1063 and 2004-029 are similar to the inspections prescribed by the Forest Service Manual. In both instances, the prescribed conduct "*might* have revealed dangerous conditions." *Id.* (emphasis added). But here, as in *Clark*, the manner in which to remediate any dangerous conditions that the prescribed conduct might reveal is protected discretionary conduct. And here, as in *Clark*, it was the latter, discretionary decision that could have prevented Plaintiff's alleged injuries.

---

[12] The Tenth Circuit's decision in *Clark* is in line with decisions from other Circuits that have rejected plaintiffs' attempts to evade the discretionary function exception where a robust exercise of discretion intervenes between plaintiff's alleged injuries and the alleged wrongdoing. *See, e.g.*, *Gen. Dynamics Corp.*, 139 F.3d 1280 (rejecting plaintiff's attempt to circumvent the discretionary function exception by challenging an allegedly negligently prepared report that led to discretionary prosecutorial decision, where the true source of plaintiff's injuries was the prosecution); *Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279 (3d Cir. 1995) (en banc) (rejecting plaintiff's attempt to circumvent the discretionary function exception by challenging an allegedly negligently prepared FDA laboratory report that led to the FDA Commissioner's discretionary decision to pull certain fruit from stores); *Mahon*, 742 F.3d 11 (failure to demand risk-management assessment of government property could not support suit under the FTCA; even if risk-management assessment were conducted, the government still retained discretion to reject the assessment's recommendations).

Furthermore, Plaintiff's efforts to isolate the conduct prescribed in VHA Directives 1063 and 2004-029 in order to avoid the discretionary function exception is a strategy specifically rejected by the Tenth Circuit in *Johnson*, 949 F.2d 332.[13]  In *Johnson*, plaintiffs challenged, inter alia, park rangers' alleged delayed and negligent response to a missing climber.  The court properly determined that the discretionary function exception shielded park rangers' decisions regarding whether, when, and how to conduct a search-and-rescue mission.  Nonetheless, plaintiffs attempted to circumvent the discretionary function exception by separating "the rangers' information gathering activity from the ultimate rescue decision."  *Id.* at 339.  But the court saw through this tactic, noting that an attempt to separate the two is "to elevate form over substance."  *Id.* "The gathering of information from an individual reporting a potential problem and the communication between rangers is inextricably tied to the rescue decision."  *Id.*  Because the court determined there was no meaningful way to consider the nature of the information gathering acts apart from the total rescue decision, which was protected by the discretionary function exception, the court held that the alleged nondiscretionary conduct could not support an independent claim under the FTCA.[14]

---

[13] This Court has properly applied the *Johnson* analysis to similar arguments regarding the negligent retention claims.  *See* Mem. & Order, *John Doe D.E. v. United States*, No. 16-cv-2162 (ECF No. 67) at 15.  The analysis applies equally to Plaintiff's purported negligent supervision claim.

[14] Other Circuits have rejected attempts to circumvent the discretionary function exception by pointing to alleged nondiscretionary conduct where such conduct is "inextricably tied" to a protected discretionary decision.  *See, e.g.*, *Gray v. Bell*, 712 F.2d 490, 513-16 (D.C. Cir. 1983) (concluding alleged improper investigatory conduct was "too intertwined with [the] purely discretionary decision[]" to prosecute and thus could not independently support suit under the FTCA due to the discretionary function exception); *Sloan v. U.S. Dep't of Hous. & Urban Dev.*, 236 F.3d 756, 761-62 (D.C. Cir. 2001) (concluding that "the challenged investigation is inextricably tied to the

Here, as in *Johnson*, the requirements in VHA Directives 1063 and 2004-029 regarding the manner in which to review a PA's performance are inextricably tied to the discretionary decision regarding the appropriate action to correct discovered deficiencies. So, as in *Johnson*, the nondiscretionary conduct involving the "gathering of information" that could reveal the deficiencies cannot be separated from the ultimate discretionary decision regarding the remediation of the discovered deficiencies, and thus cannot support an independent claim under the FTCA.

Finally, that Plaintiff has characterized his claim as one for "negligent supervision," which is a separate claim under Kansas state law, is of no moment. *See Fothergill v. United States*, 566 F.3d 248, 252 (1st Cir. 2009) ("[T]he applicability of the discretionary function exception turns on the nature and quality of the harm-producing conduct, not on the plaintiffs' characterization of that conduct."); *Gen. Dynamics Corp.*, 139 F.3d at 1283 (a plaintiff cannot circumvent the discretionary function exception through "mislabeling and misdescription of the truly discretionary source of the injury."); *see also id.* ("Courts are not required to, and should not, simply look at the surface of a complaint for the purpose of ascertaining the true basis of an attack upon something the government has done.").

---

discretionary, quasi-prosecutorial decision to suspend plaintiffs from governmental contracting" and thus cannot support an independent claim under the FTCA); *Molchatsky v. United States*, 713 F.3d 159, 162 (2d Cir. 2013) ("Plaintiffs' harm ultimately stems from the SEC's failure to investigate Madoff and uncover his Ponzi scheme. As a result, the conduct Plaintiffs seek to challenge is too intertwined with purely discretionary decisions made by SEC personnel." (internal quotation marks omitted)). *See also Hardscrabble Ranch, L.L.C. v. United States*, 840 F.3d 1216, 1222 (10th Cir. 2016) ("'The existence of some mandatory language does not eliminate discretion when the broader goals sought to be achieved necessarily involve an element of discretion.'") (quoting *Miller v. United States*, 163 F.3d 591, 595 (9th Cir. 1998)).

Discovery, including Plaintiff's own expert report, confirms that the alleged harm-causing conduct in this case was the VA's decisions regarding the discipline and retention of Wisner. These decisions are covered by the discretionary function exception. Like the Tenth Circuit in *Clark* and *Johnson*, this Court must reject Plaintiff's attempts to avoid the discretionary function exception by identifying and isolating purported nondiscretionary conduct that is not the true cause of his alleged harm. Plaintiff's claim against the United States, artfully labeled as one for negligent supervision, must be dismissed for lack of subject-matter jurisdiction.

## CONCLUSION

For the reasons stated in this memorandum, the United States respectfully submits that this Court should grant the United States' motion for summary judgment and dismiss Plaintiff's action against the United States in its entirety as lacking subject-matter jurisdiction.

Dated: June 3, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General, Civil Division

JAMES G. TOUHEY, Jr.
Director, Torts Branch

ROGER D. EINERSON
Deputy Director, Torts Branch

s/ Sarah E. Haston
_____
SARAH E. HASTON
*Counsel for Defendant United States*
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
P.O. Box 888
Washington, D.C. 20044-0888
Tel. / Fax: (202) 616-4233 / 5200
Sarah.E.Haston@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2019, the foregoing was electronically filed with the clerk of the court by using CM/ECF system which will send a notice of electronic filing to the following:

> J'Nan C. Kimak
> jck@hfmlegal.com
>
> Daniel A. Thomas
> dat@hfmlegal.com
>
> Nichelle L. Oxley
> nlo@hfmlegal.com
>
> *Attorneys for Plaintiff*

I further certify that a copy of the foregoing was sent via First Class Mail to the following non-ECF participants:

> Mark Wisner
> KDOC # 0117741
> P.O. Box 546
> Norton, Kansas 67654-0546

s/ Sarah E. Haston
_____
SARAH E. HASTON
*Counsel for Defendant United States*