**UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS**

-------------------------------------------------------------------- x

JOHN DOE A.L.,

                              Plaintiff,

            -against-

UNITED STATES OF AMERICA, and
MARK E. WISNER,

                    Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT UNITED STATES' MOTION FOR SUMMARY JUDGMENT**

16 CV 2627 (CM) (TJJ)

-------------------------------------------------------------------- x

## PRELIMINARY STATEMENT

In its motion for summary judgment (Dkt. Nos. 51, 52), the United States established, *inter alia*, that Plaintiff's action is not cognizable under the Federal Tort Claims Act ("FTCA") because Plaintiff's alleged injuries stem from Wisner's intentional torts.  Plaintiff's action is therefore barred, in its entirety, by 28 U.S.C. § 2680(h) – the FTCA's "intentional tort exception."  The United States also established that Plaintiff's negligent supervision claim is barred by the discretionary function exception.  In his opposition ("Pl.'s Opp.") (Dkt. No. 56), Plaintiff asks this Court to ignore (1) his own Contentions of Fact in the Pretrial Order and (2) his own counsel's repeated statements during sworn depositions, in an effort to manufacture a material disputed fact. In this reply, the United States shows that Plaintiff's arguments are insufficient and without merit.[1] The undisputed facts, including Plaintiff's own representations to the Court, make clear that summary judgment is warranted.

---

[1] The United States does not herein abandon or waive the other arguments advanced in its motion for summary judgment (Dkt. Nos. 51, 52), but limits its reply to those matters raised in Plaintiff's opposition that warrant a written reply.

## UNITED STATES' RESPONSES TO
## <u>"PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS"</u>

In accordance with Local Rule 56.1, the United States has responded to the supplemental facts set forth in Plaintiff's Opposition (Dkt. No. 56 at 33-50), for purposes of this motion for summary judgment, below.  In so responding, the United States does not concede that any of the purported "facts" below are material to any matters at issue in the United States' motion for summary judgment.  To the contrary, the United States maintains that the only facts material to the summary judgment motion were set forth in the United States initial moving papers.  *See* USA's Statement of Material Facts.  The United States objects to Plaintiff's inclusion of the below 105 "supplemental facts" as an attempt to suggest the existence of a genuine dispute of material fact.  The United States maintains that none exists.  Furthermore, the United States notes that Plaintiff's argument in opposition fails to refer to the vast majority of the "supplemental facts" listed below.  To the extent Plaintiff's argument in opposition does not refer to or rely upon a "supplemental fact" listed below, the United States objects and submits that it need not be considered by the Court.

1.      The United States is interested in providing medical treatment to patients at VA medical centers. Pretrial Order, ECF Doc. 49, P. 4. *See also*, U.S.A. Response to Plaintiff John Doe A.L.'s 1st RFAs, No. 23, attached hereto as <u>**Exhibit A**</u>).

**RESPONSE:  Uncontroverted.[2]**

2.      The VA employed Mark E. Wisner to, in part, conduct physical exams of patients which may have involved sensitive or "intimate" matters. Pretrial Order, ECF Doc. 49, P. 4. *See*

---

[2] The United States notes that Plaintiff's Exhibit A (Dkt. No. 59) is actually the United States' Response to Plaintiff John Doe P.M.'s 1st Requests for Admissions, rather than John Doe A.L.'s 1st Requests for Admissions.

*also*, U.S.A. Response to Plaintiff John Doe A.L.'s 1st RFAs, No. 21, attached hereto as **Exhibit A**.

**RESPONSE:  Uncontroverted.**

3.      The VA employed Mark E. Wisner to, in part, conduct physical examinations of patients which may have involved sensitive or "uncomfortable" matters. Pretrial Order, ECF Doc. 49, P. 4. *See also*, U.S.A. Response to Plaintiff John Doe A.L.'s 1st RFAs, No. 22, attached hereto as **Exhibit A**.

**RESPONSE:  Uncontroverted.**

4.      It is possible for a physician assistant hired by the VA to make mistakes or provide unnecessary care on occasion, or on occasion to elicit information that was not necessary to providing medical care. (U.S.A. Response to Plaintiff John Doe A.L.'S 1ST RFAs, Nos. 33-35, attached hereto as **Exhibit A**).

**RESPONSE:  Uncontroverted.**

5.      It is possible that for a physician assistant hired by the VA to inadequately document all aspects of an encounter with a patient. (U.S.A. Response to Plaintiff John Doe A.L.'s 1st RFAs, No. 36, attached hereto as **Exhibit A**).

**RESPONSE:  Uncontroverted.**

6.      The United States did not require a supervisor to be present during Mark E. Wisner's examinations of his patients. (U.S.A. Response to Plaintiff John Doe A.L.'s 1st RFAs, No. 37, attached hereto as **Exhibit A**).

**RESPONSE:  Uncontroverted.**

7.      The United States did not require a chaperone to be present during Mark E. Wisner's examinations of his male patients. Pretrial Order, ECF Doc. 49, P. 4. (U.S.A. Response to Plaintiff John Doe A.L.'s 1st RFAs, No. 38, attached hereto as **Exhibit A**).

**RESPONSE:  Uncontroverted.**

8.      In March 2012, Mark Wisner's direct supervisor, Dr. Daniel Cline, was aware of an allegation that Mark Wisner performed an inappropriate patient examination. (Dep. of Dr. Daniel Cline, dated Oct. 18, 2017, at 239:8-12, attached hereto as **Exhibit B**).

**RESPONSE:  Controverted.  This statement is not supported by the portion of the materials Plaintiff cited,** *see* **Fed. R. Civ. P. 56(c)(1)(A) and in fact, it is directly controverted by Dr. Cline's deposition testimony.** *See* **Cline Dep. (Pl.'s Ex. B) at 238:7-10 (Q: "I believe you told us earlier that in March of 2012, you were made aware of inappropriate examination of a patient."  A: "I was not.").**

9.      On or about March 29, 2012, a patient alleged that he had been sexually assaulted by Mark E. Wisner at a medical appointment the previous day. Pretrial Order, ECF Doc. 49, P. 4. *See also*, U.S.A. Response to Plaintiff John Doe A.L.'s 1st RFAs, No. 5, attached hereto as **Exhibit A.**

**RESPONSE:  Uncontroverted.**

10.      On or about March 29, 2012, VA police and the VA Office of Inspector General were made aware of the patient's allegations. Pretrial Order, ECF Doc. 49, P. 4. *See also*, U.S.A. Response to Plaintiff John Doe A.L.'s 1st RFAs, No. 5, attached hereto as **Exhibit A**.

**RESPONSE:  Uncontroverted, to the extent "the patient" referred to in this paragraph 10 is the same patient referred to in Plaintiff's paragraph 9, above.**

11.      The allegations of the patient referenced above were investigated and the allegations were closed as unproven. Pretrial Order, ECF Doc. 49, P. 4. *See also*, U.S.A. Response to Plaintiff John Doe A.L.'s 1st RFAs, No. 5, attached hereto as **Exhibit A**.

**RESPONSE:  Uncontroverted, to the extent "the patient" referred to in this paragraph 11 is the same patient referred to in Plaintiff's paragraphs 9 and 10, above.**

12.    The "investigation" referenced above was never reported to the local police or the

any state medical/licensing authority.

**RESPONSE:  Controverted.  The United States objects on the grounds that the statement is not supported by references to the record.  *See* Fed. R. Civ. P. 56(c)(1); D. Kan. Local Rule 56.1(b)(2).**

13.    Instead, the "investigation" was conducted by VAMC Leavenworth police

personnel who forwarded their findings to the OIG. Baker

**RESPONSE:  Controverted.  The United States objects on the grounds that the statement is not supported by references to the record.  *See* Fed. R. Civ. P. 56(c)(1); D. Kan. Local Rule 56.1(b)(2).**

14.    The investigation was closed within 24 hours.

**RESPONSE: Controverted.  The United States objects on the grounds that the statement is not supported by references to the record.  *See* Fed. R. Civ. P. 56(c)(1); D. Kan. Local Rule 56.1(b)(2).**

15.    In February 2014 the Department of Veterans Affairs was aware of an allegation

that Mark Wisner performed an inappropriate patient examination. (Dep. of Dr. Daniel Cline, Oct.

18, 2017, 36:19 – 238:5, 239:8-12, attached hereto as **Exhibit B**)

**RESPONSE:  Controverted.  The United States objects on the grounds that the material cited to support the fact cannot be presented in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2).  Plaintiff has cited to deposition testimony that was elicited in response to improperly formed questions, which the United States objected to.[3]**

16.    The patient who made the complaint subsequently took his own life.

**RESPONSE: Controverted.  The United States objects on the grounds that the statement is not supported by references to the record.  *See* Fed. R. Civ. P. 56(c)(1); D. Kan. Local Rule 56.1(b)(2).**

---

[3] Plaintiff's citation to Cline's deposition at *36:19* – 238:5, rather than *236:19* – 238:5, appears to be a scrivener's error.  To the extent this is not a scrivener's error, the United States objects on the grounds that Plaintiff fails to cite to "particular parts of materials in the record" supporting the assertion.  Fed. R. Civ. P. 56(c)(1)(A).

17.     As a physician assistant at the Leavenworth VA Medical Center, Mark E. Wisner practiced under the supervision of various physicians. Pretrial Order, ECF Doc. 49, P. 5. *See also*, U.S.A. Answer, Case No. 16-cv-2162, ECF No. 74 par. 13.

**RESPONSE:  Uncontroverted.[4]**

18.     Dr. Daniel Cline served as Mark E. Wisner's supervising physician and first-line supervisor from 2010 to end of Mark E. Wisner's employment at the VA. (Dep. of Dr. Daniel Cline, dated Oct. 18, 2017, at 239:8-12, attached hereto as **Exhibit B**).

**RESPONSE:  Controverted.  The United States objects on the grounds that Plaintiff has failed to support this assertion by citing to "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A).  The cited portion of the Dr. Cline's deposition does not support this assertion.  *See* Cline Dep. (Pl.'s Ex. B) at 239:8-14 (Q: "Then in February of 2014, at a minimum, the VA was made aware of a second allegation of Mark Wisner providing inappropriate patient examinations; is that correct? A: "Yes." MS. HASTON: "Objection to form." THE WITNESS: "That's correct.").**

19.     Supervising Mark E. Wisner was within Dr. Cline's scope of employment. (Dep. of Dr. Daniel Cline, dated Oct. 18, 2017, at 246:22-25, attached hereto as **Exhibit B**).

**RESPONSE:  Uncontroverted.**

20.     Mark Wisner's collaborating physicians at the VA, including Dr. Daniel Cline, were responsible pursuant to VHA Directive 1063 for providing clinical oversight, consultation and patient care management assistance to Mark Wisner. Pretrial Order, ECF Doc. 49, P. 5. *See also*, VHA Directive 1063 WIS00030690 – 30702, attached hereto as **Exhibit C**.

**RESPONSE:  Uncontroverted.**

---

[4] Defendant United States notes that Plaintiff has cited to the United States' Answer in a separate matter (*John Doe D.E. v. United States et al.*, Case No. 16-cv-2162).  That Answer, which was responds to a complaint filed by plaintiff John Doe D.E., not the instant Plaintiff, has no bearing on this matter.

21.     Mark Wisner's collaborating physicians at the VA, including Dr. Daniel Cline, were responsible pursuant to VHA Directive 1063 for monitoring Mark Wisner's clinical activities to ensure they were within the authorized scope of practice. Pretrial Order, ECF Doc. 49, P. 5. *See also*, VHA Directive 1063 WIS00030690 - 30702 attached hereto as **Exhibit C**.

**RESPONSE:  Uncontroverted.**

22.     The Chief of Service in Mark Wisner's chain of command at the VA was responsible pursuant to VHA Directive 1063 for taking action to correct any discovered deficiencies in Mark Wisner's clinical practice. Pretrial Order, ECF Doc. 49, P. 5. *See also*, VHA Directive 1063 WIS00030690 - 30702 attached hereto as **Exhibit C**.

**RESPONSE:  Uncontroverted.**

23.     Mark Wisner was employed as a physician's assistant with the Department of Veterans Affairs ("VA") from September 28, 2008 until June 28, 2014. (U.S.A. Response to Plaintiff John Doe A.L.'s 1st RFAs, No. 7, attached hereto as **Exhibit A**).

**RESPONSE:  Uncontroverted.**

24.     The VA employed Mark Wisner to provide direct patient care to veterans, including Plaintiff John Doe A.L. Pretrial Order, ECF Doc. 49, P. 4. *See also*, U.S.A. Response to Plaintiff John Doe A.L.'s 1st RFAs, Nos. 21 and 22, attached hereto as **Exhibit A**.

**RESPONSE: Uncontroverted that the VA employed Mark Wisner to provide patient care to veterans, including Plaintiff John Doe A.L.  The United States objects to the phrase "direct patient care" as ambiguous.**

25.     The medical care the VA expected Mark Wisner to provide Plaintiff John Doe A.L. and other veterans required him, in part, to conduct physical examinations and prescribe medications. Pretrial Order, ECF Doc. 49, P. 14 - 15, attached hereto as **Exhibit A**.

**RESPONSE:  Controverted in part.  It is uncontroverted that the medical care the VA expected Mark Wisner to provide Plaintiff John Doe A.L. and other veterans required him,**

in part, to conduct physical examinations and prescribe medications, *when medically indicated*. It is controverted that the VA expected Mark Wisner to conduct physical examinations and/or prescribe medications to Plaintiff John Doe A.L. and other veterans absent medical indication. To the extent Plaintiff's statement is interpreted as the latter, the United States objects on the grounds that the material cited to support the fact cannot be presented in a form that would be admissible in evidence. *See* **Fed. R. Civ. P. 56(c)(2).**

26.  As Mark Wisner was just a physician's assistant, he was only able to provide

medical care to Plaintiff John Doe A.L. and other veterans under the supervision of various VA

physicians. (U.S.A. Answer, Case No. 16-cv-2162, ECF No. 74 par. 13).

**RESPONSE: Uncontroverted.[5]**

27.  Dr. Daniel Cline, an employee of the VA, was Mark Wisner's supervising

physician, and first-line supervisor during the time in which he provided Plaintiff John Doe A.L.

medical care at the VA. (Dep. of Dr. Daniel Cline, dated Oct. 18, 2017, at 239:8-12, attached

hereto as **Exhibit B**).

**RESPONSE: Controverted in part. It is uncontroverted that Dr. Daniel Cline was an employee of the VA at all relevant times. It is also uncontroverted that Dr. Cline was Mark Wisner's supervising physician and first-line supervisor for at least part of the time in which Wisner was treating patients at the VA. However, the statement is controverted to the extent it suggests Dr. Cline was Wisner's supervising physician the entire time in which he (Wisner) provided Plaintiff John Doe A.L. medical care at the VA. The statement is also controverted to the extent it suggests Dr. Cline was Wisner's first-line supervisor the entire time in which he (Wisner) provided John Doe A.L. medical care at the VA. The United States objects on the grounds that Plaintiff has failed to support this assertion by citing to "particular parts of materials in the record." Fed. R. Civ. P. 56.1(c)(1)(A). The cited portion of the Dr. Cline's deposition does not support this assertion. *See* Cline Dep. (Pl.'s Ex. B) at 239:8-14 (Q: "Then in February of 2014, at a minimum, the VA was made aware of a second allegation of Mark Wisner providing inappropriate patient examinations; is that correct? A: "Yes." MS. HASTON: "Objection to form." THE WITNESS: "That's correct.").**

---

[5] Defendant United States notes that Plaintiff has cited to the United States' Answer in a separate matter (*John Doe D.E. v. United States et al.*, Case No. 16-cv-2162). That Answer, which was responds to a complaint filed by plaintiff John Doe D.E., not the instant Plaintiff, has no bearing on this matter.

28.     By the time Mark Wisner began providing medical care to Plaintiff John Doe A.L., and certainly by the time he examined Plaintiff in March and April of 2014, the VA had received multiple reports concerning inappropriate patient care by Mark Wisner. Pretrial Order, ECF Doc. 49, P. 15.

**RESPONSE:  Controverted.  The United States objects on the grounds that the material cited cannot be presented in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2).  Plaintiff's cited support for this assertion is his own Factual Contentions in the Pretrial Order, but a nonmoving party cannot rest on his own pleadings. *See Boyer v. Board of County Com'rs of County of Johnson County*, 922 F. Supp. 476 (D. Kan. 1996) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings.") (quoting *Phillips v. Calhoun*, 956 F.2d 949 (10th Cir. 1992)).**

29.     These reports included reports to a VA social worker in 2011 regarding Mark Wisner's failure to wash his hands during an exam, a report in February 2012 to a VA patient advocate regarding his comments and questions during an examination, and the use of a scope to perform a rectal exam, a report in March 2012 to VA administrators and police about Mark Wisner performing an inappropriate medical exam, and a report to a VA social worker in 2012 that a veteran felt uncomfortable with the frequency of Mark Wisner's genitalia exams. Pretrial Order, ECF Doc. 49, P. 15.

**RESPONSE:  Controverted.  The United States objects on the grounds that the material cited to support the fact cannot be presented in a form that would be admissible in evidence.  *See* Fed. R. Civ. P. 56(c)(2).  Plaintiff's cited support for this assertion is his own Factual Contentions in the Pretrial Order, but a nonmoving party cannot rest on his own pleadings. *See Boyer v. Board of County Com'rs of County of Johnson County*, 922 F. Supp. 476 (D. Kan. 1996) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings.") (quoting *Phillips v. Calhoun*, 956 F.2d 949 (10th Cir. 1992)).**

30.     Following those reports, the VA was made aware of even more allegations of inappropriate patient care by Mark Wisner, including a 2013 report to a patient advocate that Mark Wisner had told a patient about putting medication up his rear end, a January 2014 report to a VA social worker that a patient felt creeped out by Wisner's genitalia exams, and a second report to

the VA from the same patient in February of 2014 again regarding Mark Wisner's examination of

his genitalia. Pretrial Order, ECF Doc. 49, P. 15 - 16.

**RESPONSE:  Controverted.  The United States objects on the grounds that the material cited to support the fact cannot be presented in a form that would be admissible in evidence.  *See* Fed. R. Civ. P. 56(c)(2).  Plaintiff's cited support for this assertion is his own Factual Contentions in the Pretrial Order, but a nonmoving party cannot rest on his own pleadings. *See Boyer v. Board of County Com'rs of County of Johnson County*, 922 F. Supp. 476 (D. Kan. 1996) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings.") (quoting *Phillips v. Calhoun*, 956 F.2d 949 (10th Cir. 1992)).**

31.     Despite all these allegations spanning over three years, the VA did not remove

Mark Wisner from the VA's clinic rooms nor did it prevent him from providing direct patient care

until the end of May 2014. Pretrial Order, ECF Doc. 49, P. 16.

**RESPONSE:  Controverted in part.  The entire statement in paragraph 31 is controverted, except that it is uncontroverted that Wisner was removed from patient care in May 2014. The United States objects on the grounds that the material cited to support the fact cannot be presented in a form that would be admissible in evidence.  *See* Fed. R. Civ. P. 56(c)(2). Plaintiff's cited support for this assertion is his own Factual Contentions in the Pretrial Order, but a nonmoving party cannot rest on his own pleadings.  *See Boyer v. Board of County Com'rs of County of Johnson County*, 922 F. Supp. 476 (D. Kan. 1996) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings.") (quoting *Phillips v. Calhoun*, 956 F.2d 949 (10th Cir. 1992)).**

32.     In May 2014 the VA finally placed Mark Wisner on administrative leave and

removed him from the VA's clinic rooms and prevented him from seeing patients. Pretrial Order,

ECF Doc. 49, P. 16.

**RESPONSE:  Controverted in part.  It is uncontroverted that in May 2014, the VA placed Wisner on administrative absence and removed him from the VA's clinic rooms and prevented him from seeing patients.  The statement is controverted to the extent Plaintiff's statement uses the word "finally."  The United States objects to Plaintiff's use of the word "finally" on the grounds that the material cited to support the fact cannot be presented in a form that would be admissible in evidence.  *See* Fed. R. Civ. P. 56(c)(2).  Plaintiff's cited support for this assertion is his own Factual Contentions in the Pretrial Order, but a nonmoving party cannot rest on his own pleadings.  *See Boyer v. Board of County Com'rs of County of Johnson County*, 922 F. Supp. 476 (D. Kan. 1996) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings.") (quoting *Phillips v. Calhoun*, 956 F.2d 949 (10th Cir. 1992)).**

33.     The VA did not monitor or supervise the medical care Mark Wisner was providing veterans such as Plaintiff John Doe A.L. at the VA. For example, it did not perform random audits of Mark Wisner's charts as it should have done and Dr. Cline, Mark Wisner's supervising physician, did not review any of his patients' charts unless he also happened to see one of those patients on his own. Pretrial Order, ECF Doc. 49, P. 16. *See also*, Dep. of Dr. Daniel Cline, 181:7-24, attached hereto as **Exhibit B.**

**RESPONSE:   Controverted.   Plaintiff has failed to support the assertion by citing to particular parts of materials in the record.  *See* Fed. R. C. P. 56(c)(1)(A).  The United States objects to the extent Plaintiff cites to his own Factual Contentions in the Pretrial Order to support this assertion, on the grounds that this is not proper support for the assertion, *see* Fed. R. Civ. P. 56(c)(2), as a nonmoving party cannot overcome summary judgment by relying on his own pleadings.  *See Boyer v. Board of County Com'rs of County of Johnson County*, 922 F. Supp. 476 (D. Kan. 1996) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings.") (quoting *Phillips v. Calhoun*, 956 F.2d 949 (10th Cir. 1992)).  The only other material Plaintiff cites, Cline Dep. (Pl.'s Ex. B) at 181:7-24, does not support this assertion.**

**Moreover, the United States maintains that this assertion is not material to any matter at issue before the Court.   The relevant VA policy—VHA Directive 1063—stated that Wisner's supervisor was to retrospectively review randomly selected patient encounter notes, which is different than a patient's chart.  *See* USA's SMUF ¶ 37, Pl.'s Opp. (Dkt. No. 56) at 28.**

34.     The VA did not stop or prevent Mark Wisner from performing inappropriate exams and making inappropriate inquiries upon Plaintiff John Doe A.L. or other veterans until May 2014, despite the fact the VA was aware of multiple allegations that he was performing inappropriate exams prior to then. Pretrial Order, ECF Doc. 49, P. 16.

**RESPONSE: Controverted in part.  It is uncontroverted that Wisner was removed from patient care in May 2014.  It is controverted that the VA was aware of multiple allegations that Wisner was performing inappropriate exams prior to May 2014 and did not stop or prevent him from performing inappropriate exams and making inappropriate inquiries. The United States objects on the grounds that the material cited to support the fact cannot be presented in a form that would be admissible in evidence.  *See* Fed. R. Civ. P. 56(c)(2). Plaintiff's cited support for this assertion is his own Factual Contentions in the Pretrial Order, but a nonmoving party cannot rest on his own pleadings.  *See Boyer v. Board of County Com'rs of County of Johnson County*, 922 F. Supp. 476 (D. Kan. 1996)**

("Unsubstantiated allegations carry no probative weight in summary judgment proceedings.") (quoting *Phillips v. Calhoun*, 956 F.2d 949 (10th Cir. 1992)).

35.    The VA did not counsel Wisner regarding his genitalia exams as soon as the

problematic patient care became apparent, which was no later than March 2012. Pretrial Order,

ECF Doc. 49, P. 16.

**RESPONSE: Controverted. The United States objects on the grounds that the material cited to support the fact cannot be presented in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2). Plaintiff's cited support for this assertion is his own Factual Contentions in the Pretrial Order, but a nonmoving party cannot rest on his own pleadings. *See Boyer v. Board of County Com'rs of County of Johnson County*, 922 F. Supp. 476 (D. Kan. 1996) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings.") (quoting *Phillips v. Calhoun*, 956 F.2d 949 (10th Cir. 1992)).**

36.    The VA did not timely inform everyone in Mark Wisner's chain of command of

each of the reports regarding inappropriate medical care. Pretrial Order, ECF Doc. 49, P. 16.

**RESPONSE: Controverted. The United States objects on the grounds that the material cited to support the fact cannot be presented in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2). Plaintiff's cited support for this assertion is his own Factual Contentions in the Pretrial Order, but a nonmoving party cannot rest on his own pleadings. *See Boyer v. Board of County Com'rs of County of Johnson County*, 922 F. Supp. 476 (D. Kan. 1996) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings.") (quoting *Phillips v. Calhoun*, 956 F.2d 949 (10th Cir. 1992)).**

37.    The VA did not store and track information about Mark Wisner in a centralized

fashion as it was required to. Pretrial Order, ECF Doc. 49, P. 16. *See also*, Dep. of Dr. Daniel

Cline, at 214:7-17, attached hereto as <u>**Exhibit B.**</u>

**RESPONSE: Controverted. The United States objects to this assertion on the grounds that Plaintiff fails to cite to "particular parts of materials in the record" supporting this assertion. Fed. R. Civ. P. 56(c)(1)(A). The deposition testimony to which Plaintiff cites does not support this assertion. *See* Cline Dep. at 214:7-17 (Pl.'s Ex. B) (When asked whether a policy existed at the Leavenworth VA medical Center, Dr. Cline responded, "I do not know"). The United States also objects on the grounds that the material cited to support the fact cannot be presented in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2). Plaintiff's cited support for this assertion is his own Factual Contentions in the Pretrial Order, but a nonmoving party cannot rest on his own pleadings. *See Boyer v. Board of County Com'rs of County of Johnson County*, 922 F. Supp. 476 (D. Kan. 1996)**

("Unsubstantiated allegations carry no probative weight in summary judgment proceedings.") (quoting *Phillips v. Calhoun*, **956 F.2d 949 (10th Cir. 1992)**).

38.     The VA permitted Mark Wisner to provide care to patients, including Plaintiff John Doe A.L., after it had received multiple, separate reports of similarly inappropriate patient care. Pretrial Order, ECF Doc. 49, P. 16. *See also*, Dep. of Dr. Daniel Cline, at 243:17-244:7, attached hereto as **Exhibit B**

**RESPONSE: Controverted. The United States objects to this assertion on the grounds that Plaintiff fails to cite to "particular parts of materials in the record" supporting this assertion. Fed. R. Civ. P. 56(c)(1)(A). The cited deposition testimony does not support this assertion. The United States also objects on the grounds that the material cited to support the fact cannot be presented in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2). Plaintiff's cited support for this assertion is his own Factual Contentions in the Pretrial Order, but a nonmoving party cannot rest on his own pleadings. *See Boyer v. Board of County Com'rs of County of Johnson County*, 922 F. Supp. 476 (D. Kan. 1996) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings.") (quoting *Phillips v. Calhoun*, 956 F.2d 949 (10th Cir. 1992)).**

39.     Dr. Daniel Cline, Mark Wisner's direct supervising physician, acknowledged everyone in Mark Wisner's chain of command should have been advised of the allegations of inappropriate patient examinations. (Dep. of Dr. Daniel Cline, dated Oct. 18, 2017, at 242:21-243:14, attached hereto as **Exhibit B**).

**RESPONSE: Controverted. The United States objects on the grounds that the material cited to support the fact cannot be presented in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2). Plaintiff has cited to deposition testimony that was elicited in response to improperly formed questions, which the United States objected to.**

40.     Dr. Cline also acknowledged that the VA should have removed Mark Wisner from the VA's examination rooms and prevented him from providing patient care at the VA by at least the end of February 2014, and deviated from the standard of care and was negligent by not doing so. (Dep. of Dr. Daniel Cline, dated Oct. 18, 2017, at 239:15-22, 244:2-12, 244:18-24 and 246:7-12, attached hereto as **Exhibit B**).

**RESPONSE:  Controverted.  The United States objects on the grounds that the material cited to support the fact cannot be presented in a form that would be admissible in evidence.  *See* Fed. R. Civ. P. 56(c)(2).  Plaintiff has cited to deposition testimony that was elicited in response to improperly formed questions, which the United States objected to.**

41.     Dr. Cline further acknowledged that the VA deviated from the standard of care by allowing Mark Wisner to see patients clinically after February 27, 2014. (Dep. of Dr. Daniel Cline, dated Oct. 18, 2017, at 239:15-22, 244:2-12, 244:18-24 and 246:7-12, attached hereto as **Exhibit B**).

**RESPONSE:  Controverted.  The United States objects on the grounds that the material cited to support the fact cannot be presented in a form that would be admissible in evidence.  *See* Fed. R. Civ. P. 56(c)(2).  Plaintiff has cited to deposition testimony that was elicited in response to improperly formed questions, which the United States objected to.**

42.     Mark E. Wisner owed Plaintiff a duty of care consistent with applicable state law and the general standards of the medical profession. (U.S.A. Response to Plaintiff John Doe A.L.'s 1st RFAs, No. 43, attached hereto as **Exhibit A**).

**RESPONSE:  Controverted.  The United States objects to this statement on the grounds that it is a legal argument, not a statement of fact.  *See* D. Kan. Summary Judgment Guidelines at ¶ 6.**

43.     Mark E. Wisner owed plaintiff a duty to meet the applicable standard of care in the medical profession to protect plaintiff from injury. (U.S.A. Response to Plaintiff John Doe A.L.'s 1st RFAs, No. 44, attached hereto as **Exhibit A**).

**RESPONSE:  Controverted.  The United States objects to this statement on the grounds that it is a legal argument, not a statement of fact.  *See* D. Kan. Summary Judgment Guidelines at ¶ 6.**

44.     Mark E. Wisner owed Plaintiff a duty of care to possess a reasonable degree of learning and skill ordinarily possessed by members of his profession and of his school of medicine in the community where he practiced. (U.S.A. Response to Plaintiff John Doe A.L.'s 1st RFAs, No. 45, attached hereto as **Exhibit A**).

**RESPONSE:  Controverted.  The United States objects to this statement on the grounds that it is a legal argument, not a statement of fact.  *See* D. Kan. Summary Judgment Guidelines at ¶ 6.**

45.     Mark E. Wisner owed plaintiff a duty to use his learning and skill to treat the plaintiff with ordinary care and diligence. (U.S.A. Response to Plaintiff John Doe A.L.'s 1st RFAs, No. 46, attached hereto as **Exhibit A**).

**RESPONSE: Controverted.  The United States objects to this statement on the grounds that it is a legal argument, not a statement of fact.  *See* D. Kan. Summary Judgment Guidelines at ¶ 6.**

46.     To the extent Mark E. Wisner examined plaintiff in order to satisfy his (Mark E. Wisner's) curiosity, personal interests, and/or in the absence of a valid medical purpose or need, those specific acts would not have met any applicable standard of care. (U.S.A. Response to Plaintiff John Doe A.L.'s 1st RFAs, No. 47, attached hereto as **Exhibit A**).

**RESPONSE:  Controverted.  The United States objects to this statement on the grounds that it is a legal argument, not a statement of fact.  *See* D. Kan. Summary Judgment Guidelines at ¶ 6.**

47.     Employees at the Leavenworth VA Medical Center also owed Plaintiff a duty of care consistent with Kansas law. (U.S.A. Response to Plaintiff John Doe A.L.'s 1st RFAs, No. 52, attached hereto as **Exhibit A**).

**RESPONSE:  Controverted.  The United States objects to this statement on the grounds that it is a legal argument, not a statement of fact.  *See* D. Kan. Summary Judgment Guidelines at ¶ 6.**

48.     The Secretary of the Department of Veterans Affairs owed Plaintiff a duty of care consistent with state law. (*See*, U.S.A. Answer, Case No. 16-cv-2162, ECF Doc. 74, par. 41).

**RESPONSE:  Controverted.  The United States objects to this statement on the grounds that it is a legal argument, not a statement of fact.  *See* D. Kan. Summary Judgment Guidelines at ¶ 6.**

49.     The United States owed Plaintiff a duty of care consistent with state law. (*See*, U.S.A. Answer, Case No. 16-cv-2162, ECF Doc. 74, par. 41).

**RESPONSE:  Controverted.  The United States objects to this statement on the grounds that it is a legal argument, not a statement of fact.  *See* D. Kan. Summary Judgment Guidelines at ¶ 6.**

50.     The Department of Veterans Affairs deviated from the standard of care and was negligent in allowing Mark Wisner to examine and treat Plaintiff on March 5, 2014. (Dep. of Dr. Daniel Cline, dated Oct. 18, 2017, at 246:23-247:2, attached hereto as **Exhibit B**).

**RESPONSE:  Controverted.  The United States objects to this statement on the grounds that it is a legal argument, not a statement of fact.  *See* D. Kan. Summary Judgment Guidelines at ¶ 6.   The United States also objects on the grounds that the material cited to support the assertion cannot be presented in a form that would be admissible in evidence.  *See* Fed. R. Civ. P. 56(c)(2).  Plaintiff has cited to deposition testimony that was elicited in response to an improperly formed question, which the United States objected to.  Moreover, the United States objects on the grounds that the assertion is misleading, as the cited deposition testimony was elicited in response to an improperly formed question regarding treatment of Kyle McIntosh on March 5, 2014, not the instant Plaintiff.  *See* Cline Dep. (Pl.'s Ex. B) at 246:23-25 ("Was it negligence on behalf of the VA to allow Mark Wisner to examine and treat *Kyle McIntosh* on March 5, 2014?") (Emphasis added.)**

51.     The purpose of a collaborating agreement between a physician and a physician-extender is to formalize the relationship and provide clear practice parameters. (*See* Dr. Kelley's expert report, P. 4, attached hereto as **Exhibit D**)

**RESPONSE:  Uncontroverted for purposes of summary judgment.**

52.     As part of that collaborating agreement, there should be regular audits of the physician extenders' charts for quality control. (*See* Dr. Kelley's expert report, P. 4, attached hereto as **Exhibit D**)

**RESPONSE:  Controverted.  The United States objects to this statement on the grounds that it is vague and ambiguous in that "regular audits" is not defined, nor is it clear what "that collaborating agreement" refers to.  The United States also objects to this statement on the grounds that this it is a legal argument, not a statement of fact.  *See* D. Kan. Summary**

**Judgment Guidelines at ¶ 6.  Nonetheless, the United States maintains that this assertion is not material to any issue before the Court in the instant motion for summary judgment.  It is undisputed that VHA Directive 1063 was only in effect for one full annual quarter of Wisner's tenure treating patients at the VA, and it speaks to a retrospective review of patient encounter notes, not medical charts.  *See* USA's SMUF ¶¶ 36, 37.**

53.   The Veterans Administration failed to adequately supervise Mr. Wisner by failing to perform random audits of Mr. Wisner's charts. (*See* Dr. Kelley's expert report, P. 4, attached hereto as **Exhibit D**)

**RESPONSE:  Controverted.  The United States objects to this statement on the grounds that it is vague and ambiguous in that "regular audits" is not defined.  The United States also objects to this statement on the grounds that it is a legal argument, not a statement of fact.  *See* D. Kan. Summary Judgment Guidelines at ¶ 6.  Nonetheless, the United States maintains that this assertion is not material to any issue before the Court in the instant motion for summary judgment.  It is undisputed that VHA Directive 1063 was only in effect for one full annual quarter of Wisner's tenure treating patients at the VA, and it speaks to a retrospective review of patient encounter notes, not medical charts.  *See* USA's SMUF ¶¶ 36, 37.**

54.   Dr. Daniel Cline, Mr. Wisner's supervising physician, testified that he only reviewed charts when he personally came in contact with a patient that had seen Mr. Wisner or when he would personally renew one of those patient's medications. (*See* Dr. Kelley's expert report, P. 4, attached hereto as **Exhibit D**. *See also*, Dep. Cline at 114:8-13, attached hereto as **Exhibit B**.

**RESPONSE:  Controverted.  Although the United States maintains that this statement is not material to any of the issues before the Court in the instant motion for summary judgment, the United States asserts that the statement is controverted by Dr. Cline's deposition testimony.  *See* Cline Dep. (Pl.'s Ex. B) at 74:10-16 (Q: "Outside of complaints or reports, did you ever review Mr. Wisner's medical records?" A: "Yes. As his collaborating physician, often we would go over cases if he had questions about testing or treatment. I would look through the records and see what his notations were and help direct him in terms of making appropriate decisions.").**

55.   Dr. Cline admitted that he, those in Mr. Wisner's chain of command, and the VA administration failed to perform random audits of Mr. Wisner's charts. (*See* Dr. Kelley's expert

report, P. 4, attached hereto as **Exhibit D**. *See also,* Dep. Cline at 114:4-7; 181:19-24, attached

hereto as **Exhibit B**.

**RESPONSE: Controverted. The United States also objects on the grounds that the material cited to support the fact cannot be presented in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2). Plaintiff cites to page 4 of Dr. Kelley's report (Pl.'s Ex. D), wherein Dr. Kelley states, without foundation, that "Dr. Cline admitted that he, those in Mr. Wisner's chain of command, and the VA administration failed to perform random audits of Mr. Wisner's charts." The United States also objects to this statement on the grounds that it mischaracterizes the cited deposition testimony. Nonetheless, the United States maintains that this assertion is not material to any issue before the Court in the instant motion for summary judgment. It is undisputed that VHA Directive 1063 was only in effect for one full annual quarter of Wisner's tenure treating patients at the VA, and it speaks to a retrospective review of patient encounter notes, not medical charts. *See* USA's SMUF ¶¶ 36, 37.**

56.     Dr. Cline testified that he was even unaware of the need to do so. (*See* Dr. Kelley's

expert report, P. 4, attached hereto as **Exhibit D**. *See also,* Dr. Cline's deposition, pages 74, 144,

181:7-18, attached hereto as **Exhibit B**.

**RESPONSE: Controverted. The United States objects to the statement on the grounds that it is vague and ambiguous. The United States is unable to properly respond to this statement because the statement does not specify what it is that Dr. Cline was allegedly unaware of.**

57.     There were multiple examples of inappropriate prescribing performed by Mr.

Wisner. (*See* Dr. Kelley's expert report, P. 4, attached hereto as **Exhibit D**)

**RESPONSE: Controverted. The United States objects to this statement on the grounds that it is vague and ambiguous such that the United States is unable to properly respond. The United States objects to the use of the phrase "multiple examples" as vague and ambiguous. The United States also objects to the use of the phrase "inappropriate prescribing" as vague and ambiguous. Moreover, this statement is not material to any of the matters at issue before the Court in the instant motion for summary judgment.**

58.     For instance, Dr. Mahoua Ray, a VA pain management physician, informed

Investigator Baker that she had many patients referred to her by Mr. Wisner, and that Wisner was

"generous" in prescribing narcotics and that she found it particularly unusual for a Physician

Assistant to prescribe such high doses of narcotic pain medications. (*See* Dr. Kelley's expert report,

P. 4, attached hereto as **Exhibit D**. See also, Kerry Baker Deposition Exhibit 6, attached hereto as

**Exhibit E**).

**RESPONSE:  Uncontroverted that a Memorandum of Interview, which memorializes an interview Investigator Baker had with a VA pain management physician, Dr. Mahoua Ray, on January 26, 2015, reflects that Dr. Ray told Investigator Baker that she thought Wisner was "generous" in prescribing narcotics and that she found it particularly unusual for a Physician Assistant to prescribe such high doses of narcotic pain medications.  The United States maintains that this statement is not material to any issues before the Court in this motion for summary judgment.**

59.    Mr. Wisner also agreed that he had overprescribed medication to his patients and

not met the appropriate standard of care and had committed repeated acts of professional

incompetency on patients at the VA medical center. (*See* Dr. Kelley's expert report, Pp. 4-5,

attached hereto as **Exhibit D**. *See also,* Wisner, Deposition Exhibit 5, Consent Order, Par.30, 37,

attached hereto as **Exhibit F**).

**RESPONSE:  Controverted.  The United States objects to this statement on the grounds that it is a legal argument, not a statement of fact.  *See* D. Kan. Summary Judgment Guidelines at ¶ 6.  The United States also maintains that this statement is not material to any issues before the Court in this motion for summary judgment.**

60.    Furthermore, Dr. Anil Desai admitted that Dr. Cline did not fulfill his supervisory

duties and was probably not supervising Wisner adequately. (*See* Dr. Kelley's expert report, P. 5,

attached hereto as **Exhibit D**. *See also*, Dr. Desai's Depo, attached hereto as **Exhibit G**, at 142:1-

20.)

**RESPONSE:  Controverted.  The United States objects on the grounds that the statement mischaracterizes the cited deposition testimony.  The United States further objects on the grounds that the material cited to support the fact cannot be presented in a form that would be admissible in evidence.  *See* Fed. R. Civ. P. 56(c)(2).  Plaintiff has cited to deposition testimony that was elicited in response to improperly formed questions, which the United States objected to.**

61.    Finally, Dr. Michael Leeson, admitted that the Veterans Administration and Mr.

Wisner's chain of command failed to adequately oversee Mr. Wisner and this was a deviation from

the standard of care. (*See* Dr. Kelley's expert report, P. 5, attached hereto as **Exhibit D**. *See also*, Dr. Leeson's Depo, attached hereto as **Exhibit H**, at 97:4-15).

**RESPONSE:  Controverted.  The United States objects on the grounds that the statement mischaracterizes the cited deposition testimony.  The United States further objects on the grounds that the material cited to support the fact cannot be presented in a form that would be admissible in evidence.  *See* Fed. R. Civ. P. 56(c)(2).  Plaintiff has cited to deposition testimony that was elicited in response to improperly formed questions, which the United States objected to.**

62.   Furthermore, the VA deviated from the standard of care when it failed to counsel Mr. Wisner regarding his genitalia exams as soon as the problematic patient care became apparent, which was no later than March of 2012, when the Veterans Administration became aware of Patient ▮▮▮▮▮ complaint against Wisner. (*See* Dr. Kelley's expert report, P. 5, attached hereto as **Exhibit D**. *See also* Cline Deposition Exhibit 3, attached hereto as **Exhibit I**.)

**RESPONSE:  Controverted.  The United States further objects to this statement on the grounds that it is a legal argument, not a statement of fact.  *See* Kan. Summary Judgment Guidelines at ¶ 6.**

63.   At that point there had been at least four reports concerning inappropriate genitalia exams. (*See* Dr. Kelley's expert report, P. 5, attached hereto as **Exhibit D**.)

**RESPONSE:  Controverted.  The United States is unable to properly respond to this statement because it is vague and ambiguous regarding when "that point" refers to.**

64.   These reports include reports to Social Worker Dawn Clouse in 2011 regarding Mr. Wisner's failure to wash his hands during an exam as she described in her deposition at pages 42 through 44. (*See* Dr. Kelley's expert report, P. 5, attached hereto as **Exhibit D**. *See also*, Deposition of Dawn Clouse, attached hereto as **Exhibit J**, at 41:5 – 44:22).

**RESPONSE:  Controverted in part.  It is uncontroverted that Ms. Clouse testified during her deposition that a patient of Wisner reported to her that Wisner didn't wash his hands.  The statement is otherwise controverted.  The United States is unable to properly respond to the statement because it is vague and ambiguous regarding the reference to "the reports."**

65.      There was a report in February 2012 to the Patient Advocate regarding Wisner's comments and questions during use of a scope to perform a rectal exam (*See* Dr. Kelley's expert report, P. 5, attached hereto as **Exhibit D**. *See also*, Desai Deposition Exhibit 8, attached hereto as **Exhibit K**.)

**RESPONSE:  Uncontroverted that a patient who is not the instant Plaintiff reported to the patient advocate in 2012 regarding Wisner's comments and questions during use of a scope to perform a rectal exam.**

66.      There was a report in March of 2012 to VA police and VA administrators in which a patient threatened to harm Mr. Wisner after reporting being sexually assaulted by him. (*See* Dr. Kelley's expert report, P. 5, attached hereto as **Exhibit D**. *See also* Cline Deposition Exhibit 3, Exhibit I.)

**RESPONSE:  Controverted in part.  Although the United States maintains that this fact is not material to any matter at issue before the Court in this motion for summary judgment, it is controverted that said report was to "VA administrators."  The cited material does not reflect this.**

67.      There was a report to Social Worker Dawn Clouse in 2012 that a veteran felt uncomfortable with the frequency of Mr. Wisner's genitalia exams. (*See* Dr. Kelley's expert report, P. 5, attached hereto as **Exhibit D**. *See also*, Deposition of Dawn Clouse, attached hereto as **Exhibit J**, at 194:4-22, and Exhibit 8 of Ms. Clouse's deposition, attached hereto as **Exhibit L**.

**RESPONSE:  Uncontroverted that a patient who is not the instant Plaintiff reported to social worker Dawn Clouse in 2012 that he felt uncomfortable with the frequency of Mr. Wisner's genitalia exams.**

68.      In 2013 there was a report to a patient advocate that Wisner had told a patient about putting medication up his rear end. (*See* Dr. Kelley's expert report, P. 5, attached hereto as **Exhibit D**. *See also*, Dr. Desai's Depo, attached hereto as **Exhibit G,** at 77:15-78:3, and Desai Deposition Exhibit 9, attached hereto as **Exhibit M**).

**RESPONSE:  Uncontroverted that a patient who is not the instant Plaintiff reported to a patient advocate in 2013 that Wisner had told the patient about putting medication up his rear end.**

69.     There was a January 2014 report to a VA social worker that he felt creeped out by Wisner's genitalia exams. (*See* Dr. Kelley's expert report, P. 5, attached hereto as **Exhibit D**. *See also*, Dr. Desai's Depo, attached hereto as **Exhibit G,** at 80:23-81:8, and Desai Deposition Exhibit 10, attached hereto as **Exhibit N**).

**RESPONSE:  Uncontroverted that a patient who is not the instant Plaintiff reported to a VA social worker in January 2014 that he felt "creeped out" by Wisner's genitalia exams.**

70.     There was also a second report from the same patient in February of 2014 again regarding Mr. Wisner's examination of his genitalia. (*See* Dr. Kelley's expert report, P. 5, attached hereto as **Exhibit D**. *See also*, Desai Deposition Exhibit 10, Exhibit N)

**RESPONSE:  Uncontroverted that the same patient referred to in Plaintiff's statement of fact paragraph 69, above, who is not the instant Plaintiff, reported to a VA social worker in February 2014 regarding Wisner's examination of his genitalia.**

71.     The Veterans Administration deviated from the standard of care when it failed to counsel Mr. Wisner regarding his exams after each one of these reports. (*See* Dr. Kelley's expert report, Pp. 5-6, attached hereto as **Exhibit D**.)

**RESPONSE:  Controverted.  The United States objects to this statement on the grounds that it is a legal argument, not a statement of fact.  *See* D. Kan. Summary Judgment Guidelines at ¶ 6.**

72.     The Veterans Administration finally did attempt to counsel Mr. Wisner after receiving the February 2014 report Dr. Cline and Dr. Desai attempted to counsel Mr. Wisner regarding his genitalia exams, instructing Mr. Wisner to ask permission to perform a genitourinary exam on a patient, offer a chaperone, and carefully chart all interactions, but Mr. Wisner deleted the email without reading it, prompting Dr. Cline to resend the email in May of 2014. (*See* Dr.

Kelley's expert report, P. 6, attached hereto as **Exhibit D**. *See also*, Desai Deposition Exhibit 13,

attached hereto as **Exhibit O**).

**RESPONSE:  Controverted in part.  The statement is controverted to the extent is uses the phrase "finally did attempt."  This phrase is not supported by the cited materials.  *See* Fed. R. Civ. P. 56(c)(1).  The United States also objects to the phrase as argumentative.**

73.      By the time the 2014 reports were made, however, the standard of care required

that Mr. Wisner should have already been removed from clinic rooms and prohibited from treating

patients. (*See* Dr. Kelley's expert report, P. 6, attached hereto as **Exhibit D**.)

**RESPONSE:  Controverted.  The United States objects to this statement on the grounds that it is a legal argument, not a statement of fact.  *See* D. Kan. Summary Judgment Guidelines at ¶ 6.**

74.      As Dr. Leeson admitted, mistakes were made in the supervision of Mr. Wisner. (*See*

Dr. Kelley's expert report, P. 6, attached hereto as **Exhibit D**. *See also*, Dr. Leeson's Deposition,

attached hereto as **Exhibit H**, at Pp. 106, 117, 118, and 145).

**RESPONSE:  Controverted.  The United States objects on the grounds that the material cited to support the fact cannot be presented in a form that would be admissible in evidence.  *See* Fed. R. Civ. P. 56(c)(2).  Plaintiff has cited to deposition testimony that was elicited in response to improperly formed questions, which the United States objected to.  The United States also objects to this statement on the grounds that it is a legal argument, not a statement of fact.  *See* D. Kan. Summary Judgment Guidelines at ¶ 6.**

75.      Furthermore, the Veterans Administration deviated from the standard of care by

failing to insure that everyone in Mr. Wisner's chain of command was advised of each of these

reports regarding inappropriate medical care. (*See* Dr. Kelley's expert report, P. 6, attached hereto

as **Exhibit D**.)

**RESPONSE:  Controverted.  The United States objects to this statement on the grounds that it is a legal argument, not a statement of fact.  *See* D. Kan. Summary Judgment Guidelines at ¶ 6.**

76.     Mr. Wisner's supervising physician, Dr. Cline, admitted he was unaware of any complaints about Wisner until 2014. (*See* Dr. Kelley's expert report, P. 6, attached hereto as **Exhibit D**. *See also*, page 88 of Dr. Cline's deposition, **Exhibit B**).

**RESPONSE:  The United States objects to this assertion on the grounds that Plaintiff fails to cite to "particular parts of materials in the record" supporting this assertion.  Fed. R. Civ. P. 56(c)(1)(A).  The particular part of the material Plaintiff cited, Cline Dep. (Pl.'s Ex. B) at p. 88, does not support this assertion.**

77.     Dr. Desai, who was Wisner's Service Line Manager, was never made aware of any complaints regarding Wisner's genitalia exams until 2014. (*See* Dr. Kelley's expert report, P. 6, attached hereto as **Exhibit D**. *See also*, Desai Deposition, attached hereto as **Exhibit G**, at pages 34, 51, 70-73, 132.)

**RESPONSE:  The United States objects to this assertion on the grounds that Plaintiff fails to cite to "particular parts of materials in the record" supporting this assertion.  Fed. R. Civ. P. 56(c)(1)(A).**

78.     Dr. Leeson admitted the Veterans Administration failed to provide information regarding the February 2012 incident to Mr. Wisner's Service Line Manager, Dr. Desai, and that there should have been an investigation at that point, but there wasn't. (*See* Dr. Kelley's expert report, P. 6, attached hereto as **Exhibit D**. *See also*, Dr. Leeson's Depo, attached hereto as **Exhibit H**, at pages 52-56).

**RESPONSE:  Controverted.  The United States objects on the grounds that the statement is vague and ambiguous, in that the statement refers to a "February 2012 incident" without specification.  The United States objects on the grounds that the material cited to support the fact cannot be presented in a form that would be admissible in evidence.  *See* Fed. R. Civ. P. 56(c)(2).  Plaintiff has cited to deposition testimony that was elicited in response to improperly formed questions, which the United States objected to.  *See* Leeson Dep. (Pl.'s Ex. H) at 55:1-21.  Nonetheless, the United States maintains that this statement is not material to any matter at issue before the Court in the instant motion.**

79.     The facility director, Rudy Klopfer, had no awareness of any reports concerning Wisner until May of 2014. (*See* Dr. Kelley's expert report, P. 6, attached hereto as **Exhibit D**. *See also*, Klopfer Deposition, attached hereto as **Exhibit P**, at pages 20- 36).

**RESPONSE:  Controverted.  The United States objects on the grounds that Plaintiff has failed to support the assertion by citing to particular parts of materials in the record.  *See* Fed. R. Civ. P. 56(c)(1)(A).  Plaintiff has generally cited to 16 pages of deposition testimony that was elicited in response to questions regarding six different exhibits which have not been made part of the record.**

80.     The Veterans Administration failed to have adequate policies and procedures in place to effectuate the necessary flow of this information to everyone in Mr. Wisner's chain of command. (*See* Dr. Kelley's expert report, P. 6, attached hereto as **Exhibit D**.)

**RESPONSE:  Controverted.  The United States objects to this statement on the grounds that it is a legal argument, not a statement of fact.  *See* D. Kan. Summary Judgment Guidelines at ¶ 6.  The United States also objects on the grounds that this statement is vague and ambiguous in that it refers to "this information" without any definition or context.**

81.     Michelle Boylan, the Chief Quality Officer at Eastern Kansas Healthcare System, admitted that the VA's centralized database did not require provider names to be associated with patient complaints, thereby making it difficult to detect any problems with patient care for a particular individual. (*See* Dr. Kelley's expert report, P. 6, attached hereto as **Exhibit D**. *See also*, Ms. Boylan's July 24, 2018 deposition, attached hereto as **Exhibit Q**, at pages 75-79).

**RESPONSE: Controverted.  The United States objects on the grounds that Plaintiff has failed to support the assertion by citing to particular parts of materials in the record.  *See* Fed. R. Civ. P. 56(c)(1)(A).  Plaintiff has generally cited to 4 pages of deposition testimony that was elicited in response to questions regarding an exhibit that has not been made part of the record.  Moreover, Plaintiff has cited to deposition testimony that was elicited in response to improperly formed questions, which the United States objected to.**

82.     Ms. Boylan also admitted that any policy the VA did have in place was broken and what should have happened did not occur (*See* Dr. Kelley's expert report, P. 6, attached hereto as

**Exhibit D**. *See also*, Ms. Boylan's July 24, 2018 deposition, attached hereto as **Exhibit Q**, at P. 90).

**RESPONSE:  Controverted.  The United States objects on the grounds that the material cited to support the fact cannot be presented in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2).  Plaintiff has cited to deposition testimony that was elicited in response to an improperly formed question, which the United States objected to.  Moreover, Dr. Kelley's report at page 6 relies on the same improper foundation that Plaintiff cites as support for this assertion.  *See* Kelley Report (Pl.'s Ex. D) at 6 ("She also admitted that any policy the VA did have in place was broken and what should have happened did not occur. (See page 90 of Ms. Boylan's July 24, 2018 deposition).").**

83.     No one at the VA had simultaneous access to all of the various databases containing the reports concerning Wisner – in fact the VA deliberately kept that information contained in separate "silos". (*See* Dr. Kelley's Expert Report, Pp. 6-7, attached hereto as **Exhibit D**. *See also*, Michelle Boylan's July 24, 2018 deposition, attached hereto as **Exhibit Q**, at Pp. 40 and 62).

**RESPONSE:  Controverted.  The United States objects on the grounds that the material cited to support the fact cannot be presented in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2).  Plaintiff has cited to deposition testimony that was elicited in response to an improperly formed question, which the United States objected to.**

84.     The standard of care required from 2009 onward during Mr. Wisner's employment at the VA a functioning centralized system for tracking information that would permit supervisors to identify harmful patient care. (*See* Dr. Kelley's expert report, P. 7, attached hereto as **Exhibit D**.)

**RESPONSE:  Controverted.  The United States objects to this statement on the grounds that it is a legal argument, not a statement of fact.  *See* D. Kan. Summary Judgment Guidelines at ¶ 6.**

85.     A system should have been in place at the hospital level to enable those reports described above to have been placed in a centralized filing system available to Mr. Wisner's chain of command and those responsible for supervising the care he provided to patients. (*See* Dr. Kelley's expert report, P. 7, attached hereto as **Exhibit D**).

**RESPONSE:  Controverted.  The United States objects to this statement on the grounds that it is a legal argument, not a statement of fact.  *See* D. Kan. Summary Judgment Guidelines at ¶ 6.  The United States further objects on the grounds that the statement is vague and ambiguous in that it refers to "those reports described above," without specification.**

86.     Dr. Desai, Dr. Kline, and even the hospital director, Rudy Klopfer, had no knowledge of any reports concerning Mr. Wisner prior to the 2014 reports. (*See* Dr. Kelley's expert report, P. 7, attached hereto as **Exhibit D**).

**RESPONSE:  Controverted.[6]  The United States objects to this assertion on the grounds that Plaintiff fails to cite to "particular parts of materials in the record" supporting this assertion. Fed. R. Civ. P. 56(c)(1)(A).  Moreover, the United States is unable to properly respond to this statement because it is overly broad in that it refers to "any reports," and it is vague and ambiguous, in that it refers to "the 2014 reports" without specification.**

87.     The patient advocate Richard Lawrenz did not share reports other than a 2014 report about Mr. Wisner with Mr. Wisner's supervisors. (*See* Dr. Kelley's expert report, P. 7, attached hereto as **Exhibit D**. *See also*, Lawrenz Deposition, attached hereto as **Exhibit R**, at Pp. 67 and 68).

**RESPONSE:  Controverted.  The United States objects to this assertion on the grounds that Plaintiff fails to cite to "particular parts of materials in the record" supporting this assertion. Fed. R. Civ. P. 56(c)(1)(A).  Moreover, the United States is unable to properly respond to this statement because it is overly broad in that it refers to "any reports," and it is vague and ambiguous, in that it refers to "the 2014 report" without specification.**

88.     Social Worker Dawn Clouse did not document reports concerning Mr. Wisner (*See* Dr. Kelley's expert report, P. 7, attached hereto as **Exhibit D**. *See also*, Deposition of Dawn Clouse, attached hereto as **Exhibit J**, at Pp. 158 and 159).

**RESPONSE:  Controverted.  Although the United States maintains that this assertion is not material to the motion before the Court, the United States denies Plaintiff's Statement of Fact ¶ 88, which is controverted by Dawn Clouse's deposition testimony.  *See* Clouse Dep.**

---

[6] Plaintiff's reference to a Dr. Kline (and Dr. Kelley's reference to the same) is presumably a scrivener's error, as there is not an individual at issue in this litigation bearing the name Dr. Kline.  Accordingly, the United States presumes that "Dr. Kline" is meant to refer to "Dr. Cline."

**(Pl.'s Ex. J) at 37:23-38:4 (Dawn Clouse testifies that in May of 2014, she filed a report addressing suspected abuse by Mark Wisner).**

89.     In fact, in 2018 Ms. Clouse requested that some kind of "protocol/procedure" for what was to be communicated to patients who believe they have been abused, what documentation is required, to whom to report incidents, and where to refer such patients. (*See* Dr. Kelley's expert report, P. 7, attached hereto as **Exhibit D**. *See also*, Dep. Klopfer deposition, attached hereto as **Exhibit P**, at 134:9-18; 139:13-17, and Klopfer Deposition Exhibit 11, attached hereto as **Exhibit S**).

**RESPONSE:   Uncontroverted for purposes of summary judgment.   Nonetheless, this statement is not material to any issues before the Court in the instant motion, since it relates to a request Ms. Clouse made in 2018, which was four years after Wisner was removed from patient care and left his employment with the VA.  *See* USA's SMUF ¶¶ 6, 7.**

90.     The Veteran Administration's complete failure to store and track information in a centralized fashion about Mr. Wisner was a deviation from the standard of care. (*See* Dr. Kelley's expert report, P. 7, attached hereto as **Exhibit D**).

**RESPONSE:  Controverted.  The United States objects to this statement on the grounds that it is a legal argument, not a statement of fact.  *See* D. Kan. Summary Judgment Guidelines at ¶ 6.**

91.     Additionally, the Veterans Administration deviated from the standard of care when it failed to prohibit Mr. Wisner from providing patient care. (*See* Dr. Kelley's expert report, P. 7, attached hereto as **Exhibit D**).

**RESPONSE:  Controverted.  The United States objects to this statement on the grounds that it is a legal argument, not a statement of fact.  *See* D. Kan. Summary Judgment Guidelines at ¶ 6.**

92.     The standard of care required the Veterans Administration to prohibit Mr. Wisner from providing patient care by no later than March of 2012. (*See* Dr. Kelley's expert report, P. 7, attached hereto as **Exhibit D**).

**RESPONSE: Controverted. The United States objects to this statement on the grounds that it is a legal argument, not a statement of fact. *See* D. Kan. Summary Judgment Guidelines at ¶ 6.**

93.     By that point, the Veterans Administration had at least four, separate reports of similar inappropriate patient care provided by Mr. Wisner. Patient safety is paramount. (*See* Dr. Kelley's expert report, P. 7, attached hereto as **Exhibit D**).

**RESPONSE: Controverted. The United States objects to this statement on the grounds that it is vague and ambiguous such that the United States is unable to properly respond. The United States is unable to properly respond to the statement as written because the phrase "By that point" is vague and ambiguous. The United States also objects to the phrase "similar inappropriate patient care" as vague and ambiguous. The United States objects to this statement on the grounds that Plaintiff fails to cite to "particular parts of materials in the record" supporting this assertion. Fed. R. Civ. P. 56(c)(1)(A).**

94.     For the reasons stated above, the Veterans Administration deviated from the standard of care when it failed to prohibit Mr. Wisner from providing patient care by March of 2012. (*See* Dr. Kelley's expert report, P. 7, attached hereto as **Exhibit D**).

**RESPONSE: Controverted. The United States objects to this statement on the grounds that it is a legal argument, not a statement of fact. *See* D. Kan. Summary Judgment Guidelines at ¶ 6.**

95.     Even Dr. Cline correctly admitted that it was the standard of care to remove Mr. Wisner following two reports. (*See* Dr. Kelley's expert report, P. 7, attached hereto as **Exhibit D**).

**RESPONSE: Controverted. The United States objects to this statement on the grounds that it is a legal argument, not a statement of fact. *See* D. Kan. Summary Judgment Guidelines at ¶ 6. The United States also objects to this assertion on the grounds that Plaintiff fails to cite to "particular parts of materials in the record" supporting this assertion. Fed. R. Civ. P. 56(c)(1)(A).**

96.     Plaintiff was exposed to Mr. Wisner's genitalia exams and inquiries including ungloved genital exams, prolonged genital exams, as well as his persistent sexual curiosity after the date Mr. Wisner should have been removed from patient care. (*See* Dr. Kelley's expert report, P. 7, attached hereto as **Exhibit D**).

**RESPONSE: Controverted. The United States objects to this statement on the grounds that it is a legal argument, not a statement of fact.** *See* **D. Kan. Summary Judgment Guidelines at ¶ 6. Moreover, the United States objects to this statement on the grounds that it is vague and ambiguous, in that the statement does not identify the date in which Wisner purportedly should have been removed from patient care.**

97.     Had the Veterans Administration met the standard of care as set out by Mr. Wisner's own supervising physician, Mr. Wisner would have been appropriately prohibited from treating Plaintiff when he presented at the VA medical center. (*See* Dr. Kelley's expert report, P. 7, attached hereto as **Exhibit D**).

**RESPONSE: Controverted. The United States objects to this statement on the grounds that it is a legal argument, not a statement of fact.** *See* **D. Kan. Summary Judgment Guidelines at ¶ 6.**

98.     Plaintiff received care at the Leavenworth VA Medical Center at 4101 South 4th Street, Leavenworth, Kansas 66048 and operated by Department of Veterans Affairs. Pretrial Order, ECF Doc. 49, P. 4. *See also*, U.S.A. Answer, Case No. 16-cv-2162, ECF Doc. 74, par. 9.

**RESPONSE: Uncontroverted.[7]**

99.     Plaintiff was seeking medical care at medical appointments documented in the medical records. Pretrial Order, ECF Doc. 49, P. 4. *See also*, U.S.A. Response to Plaintiff John Doe A.L.'s 1st RFAs, No. 27, attached hereto as **Exhibit A**.

**RESPONSE: Uncontroverted.**

100.     Mark E. Wisner's medically documented examinations of the plaintiff occurred at the Leavenworth VA facility while the facility was open and operating. Pretrial Order, ECF Doc.

---

[7] Defendant United States notes that Plaintiff has cited to the United States' Answer in a separate matter (*John Doe D.E. v. United States et al.*, Case No. 16-cv-2162). That Answer, which was responds to a complaint filed by plaintiff John Doe D.E., not the instant Plaintiff, has no bearing on this matter. Defendant United States also notes, for the Court's reference, that the information relevant to this assertion is located on page 5 of the Pretrial Order (Dkt. No. 49), not page 4.

49, P. 4. *See also*, U.S.A. Response to Plaintiff John Doe A.L.'s 1st RFAs, No. 28, attached hereto as **Exhibit A**.

**RESPONSE:  Uncontroverted.**

100.    Mark E. Wisner's medically documented examinations of the plaintiff occurred in an exam room at the Leavenworth VA facility. Pretrial Order, ECF Doc. 49, P. 4. *See also*, U.S.A. Response to Plaintiff John Doe A.L.'s 1st RFAs, No. 29, attached hereto as **Exhibit A**.

**RESPONSE:  Uncontroverted.**

102.    Mark E. Wisner's medically documented genital exams were part of his overall physical examinations. Pretrial Order, ECF Doc. 49, P. 5. *See also*, U.S.A. Response to Plaintiff John Doe A.L.'s 1st RFAs, No. 30, attached hereto as **Exhibit A**.

**RESPONSE:  Uncontroverted.**

103.    At least some portions of the medical care Mark E. Wisner provided Plaintiff was for a valid medical purpose in order to provide diagnostic care. Pretrial Order, ECF Doc. 49, P. 5. *See also*, U.S.A. Response to Plaintiff John Doe A.L.'s 1st RFAs, No. 26, attached hereto as **Exhibit A**. *See also,* Dr. Kelley's expert report.

**RESPONSE:  Uncontroverted.**

104.    Conducting a genital exam without a glove, however, which Wisner has admitted to, is a deviation from the medical standard of care. *See generally*, Dr. Kelley's expert report, attached hereto as **Exhibit D**.

**RESPONSE:  Controverted.  The United States objects to this statement on the grounds that it is a legal argument, not a statement of fact.  *See* D. Kan. Summary Judgment Guidelines at ¶ 6.**

105.   The Department of Veterans Affairs was aware of at least six allegations of inappropriate patient exams performed by Mark Wisner prior to Plaintiff's March 5, 2014 clinic visit. *See generally*, Dr. Kelley's expert report, attached hereto as **<u>Exhibit D</u>**.

**RESPONSE:  Controverted.  The United States objects on the grounds that Plaintiff has failed to support the assertion by citing to particular parts of materials in the record.  *See* Fed. R. Civ. P. 56(c)(1)(A).  The United States also objects on the grounds that the material cited to support the fact cannot be presented in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2).  Moreover, Plaintiff has failed to produce any evidence whatsoever supporting an assertion that he had a clinic visit on March 5, 2014.  *See* USA's SMUF ¶ 5 (according to his medical records, Plaintiff's last visit with Wisner was on February 25, 2014).**

## ARGUMENT

I.   **ALL OF PLAINTIFF'S CLAIMS ARISE FROM WISNER'S INTENTIONAL, CRIMINAL CONDUCT AND THEREFORE ARE BARRED BY THE INTENTIONAL TORT EXCEPTION TO THE FTCA**

As discussed in Defendant's initial moving papers, Wisner's repeated assaults on Plaintiff did nothing to further the interests of the VA, and were not committed within the scope of his employment. Plaintiff's opposition ("Pl.'s Opp." (Dkt. No. 56)) not only fails to refute Defendant's position, but serves to bolster it. As such, Defendant's arguments are not re-hashed here. What must be addressed, however, is the fact that, regardless of whether Wisner was acting within the scope of his employment, Plaintiff's claims are still barred by 28 U.S.C. § 2680(h) – the FTCA's "intentional tort exception." Plaintiff has repeatedly conflated these two arguments, but they are, indeed, distinct and not dependent on one another.

There is now no question, and Plaintiff has admitted, that Wisner's complained of actions were intentional,[8] *see* Pl.'s Opp. (Dkt. No. 56) at pp. 63-64 ("Wisner's conduct was intentional…"), and therefore falls within the FTCA's intentional tort exception.[9] The only

---

[8] Plaintiff spends a great deal of time in his opposition papers arguing that Wisner's admissions during his interview by the VA OIG and in the KSBHA Consent Order do not apply to Plaintiff, or are somehow controverted through adverse inferences as a result of the fact that Wisner invoked his Fifth Amendment privilege during deposition. *See* Pl.'s Opp. at 5-18 (responding to United States SMUF ¶¶ 8-14). As an initial matter, the United States notes that Plaintiff's inclusion of legal argument in the statement of facts is inappropriate and should not be considered by the Court. *See* D. Kan. Summary Judgment Guidelines at ¶ 6. Moreover, the suggestion that Wisner's invocation of the Fifth Amendment creates an adverse inference that can be applied against the United States is incorrect as a matter of law. *See LiButti v. United States*, 107 F.3d 110 (2d Cir. 1997) (adopted by the 10th Cir. in, *e.g., In re Urethene Antitrust Lit.*, No. 04 CV 1616, 2013 WL 100250 (D. Kan. Jan. 8, 2013)) (setting out a non-exclusive, four factor test for determining whether an adverse inference can be applied to a party other than the party who invoked the Fifth Amendment). However, the United States will not fully brief this issue here, given that Plaintiff has already admitted that Wisner's actions were intentional.

[9] The FTCA makes the United States liable "to the same extent as a private individual under like circumstances," 28 U.S.C. § 2680(a) – (n). Section 2680(h) preserves the Government's sovereign immunity from suit on, *inter alia*, "[a]ny claim arising out of battery." "Section 2680(h)

question remaining for the Court is whether the so-called VA Immunity Statute, 38 U.S.C. § 7316,[10] applies to permit Plaintiff's claims to proceed.

Under certain circumstances, the VA Immunity Statute, 38 U.S.C. § 7316, applies the remedies available against the United States under the FTCA to damages arising from the *provision of medical services* by healthcare employees of the VA.  *See Franklin*, 992 F.2d at 1502; *Ingram*, 728 F.3d at 1246.   This "exception to the exception" is not a blanket one; certain conditions must be met before it applies – conditions which are *not* present in this case.  More specifically, § 7316(f) states:

> The exception provided in section 2680(h) of title 28 shall not apply to any claim arising out of a negligent or wrongful act or omission of any person described in subsection (a) in *furnishing medical care or treatment* … while in the exercise of such person's duties for the administration.

38 U.S.C. § 7316(f) (emphasis added).

---

does not merely bar claims *for* assault and battery; in sweeping language it excludes any claim *arising out of* assault or battery." *Franklin v. United States*, 992 F.2d 1492, 1498 (10th Cir. 1993); *see also Olson v. United States ex rel. Dep't of the Army*, 144 Fed. Appx. 727 (10th Cir. 2005) (holding that even if an employee was acting within the scope of his employment at the time of the assault, the FTCA's intentional tort exception bars plaintiff from imposing liability on the United States based on a *respondeat superior* theory of liability).

[10] Plaintiff spends several pages (*see* Pl.'s Opp. (Dkt. No. 56) at pp. 61-64) arguing that the VA Immunity Statute's application is not limited to claims of medical battery.  In a sense, this is true.  In *Ingram*, the Tenth Circuit read the Statute to permit suit for all of the torts enumerated in § 2680(h). *See Ingram v. Faraque*, 728 F.3d 1239, 1249 (10th Cir. 2013).  In that regard, *Ingram* expanded upon the holding in *Franklin*.  What it did *not* do, as plaintiff has repeatedly suggested, is expand the application of the Statute to all instances of assault and battery simply because they were committed by VA personnel.  The Statute is *only* applicable to instances of *medical battery*; that is, battery committed by VA personnel in the course of *rendering medical treatment or care*.  To conclude otherwise, would be to impermissibly ignore the first clause of § 7316(f): "…in furnishing medical care or treatment…" *See, e.g., Mallo v. IRS (In re Mallo)*, 774 F.3d 1313, 1323 (10th Cir. 2014) (noting that a court must construe a statute to give effect to "all its provisions, so that no part will be inoperative or superfluous, void or insignificant.") (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)).

In other words, the test is not simply, as Plaintiff has argued, whether Wisner was acting within the scope of his employment. Instead, the Court must also determine whether Wisner was "furnishing medical care or treatment" when he repeatedly sexually molested Plaintiff. These are two separate and distinct inquiries. While Kansas state law governs the question of whether the conduct at issue was within the scope of Wisner's employment, federal law governs the question of whether the conduct constitutes medical care or treatment within the meaning of section 7316(f).

In his opposition papers, and throughout the course of this litigation, Plaintiff has conflated these two analyses. Plaintiff relies heavily on *Ingram*, but misstates its holding. *See* Pl.'s Opp. (Dkt. No. 56) at pp. 62-63. The plaintiff in *Ingram* was held in a VA psychiatric ward for twenty-four hours, after threatening to harm or kill his supervisor, before he was medically cleared and released. *See Ingram*, 728 F.3d at 1241-42. The plaintiff brought suit against the VA alleging that he had been falsely arrested and imprisoned – intentional torts normally excepted under 28 U.S.C. § 2680(h). The Tenth Circuit found that the decision to commit and evaluate the plaintiff – the acts which formed the basis of his false arrest/imprisonment claim – was made in the context of *delivering medical treatment*. Specifically, the court found that the actions were:

> relevant to the *provision of medical care*[,] … that each action was undertaken based on the decisions and information pertinent to Defendants as a result of their *specialized education* and *training in the field of medicine*/psychology[,] … as a result of the need for an evaluation by a medical professional.

*Id.* at 1250-51 (emphasis added).

The *Ingram* court applied the VA Immunity Statute, not simply because VA doctors were acting within the scope of their employment, but because the actions which formed the basis for the claims were relevant to the *provision of medical care*. *See also Levin v. United States*, 568

U.S. 503 (2013) (citing the Gonzalez Act, 10 U.S.C. § 1089(e), a "parallel statute," which provides that the FTCA's intentional tort exception "shall not apply to a cause of action arising out of … the performance of medical, dental, or related healthcare functions," and finding "nothing dispositively different about the wording" of the Gonzalez Act and the VA Immunity Statute).

The Tenth Circuit properly considered the application of the VA Immunity Statute in *Franklin*, holding that Congress's clear intent was to "shore up gaps in the personal immunity afforded government employees without further broadening government liability, not to affirmatively cut back on the existing scope of the FTCA." *Franklin*, 992 F.2d at 1502.  The court concluded that "§ 2680(h) does not bar application of the FTCA to tort claims arising out of the conduct of the VA medical personnel within the scope of [§ 7316(f)]." *Id.*  In other words, even if an employee is acting within the scope of his employment under the applicable state law, the VA Immunity Statute will only apply if the alleged tort was committed in the furnishing of medical care or treatment.  As the record evidence now makes crystal clear, Wisner's conduct was in no way "the furnishing of medical care."  Thus, even if Wisner was acting within the scope of his employment under Kansas law, Plaintiff's claims still fail.

In his opposition papers, Plaintiff alleges that Wisner "repeatedly fondled plaintiff's genitals, conducted unnecessary invasive exams, and made inappropriate and harassing sexual comments at nearly every encounter he had with plaintiff."  Pl.'s Opp. (Dkt. No. 56) at p. 51.  Plaintiff concedes that the conduct complained of was not negligence ("Wisner's conduct was intentional…").  *Id.* at pp. 63-64.  This places Plaintiff's claims squarely within the confines of § 2680(h).  In order to save his claims – in order to invoke the "exception to the exception" – Plaintiff must establish not only that Wisner was acting within the scope of his employment as defined by

Kansas law, but *also* that his repeated sexual assaults of Plaintiff amounted to the furnishing of medical care and treatment, as contemplated by § 7316(f).  This Plaintiff cannot do.

In his opposition, Plaintiff makes the bald assertion that "sufficient facts have been pleaded to support a claim for liability against the United States pursuant to the VA Immunity Statute," Pl.'s Opp. (Dkt. No. 56) at p. 63.  *See Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir. 1993) (at summary judgment, the non-moving party cannot rest on mere allegations in the pleadings).  To the extent Plaintiff suggests he has provided "sufficient facts" to overcome summary judgment in his "Statement of Additional Material Facts," it is not at all clear to which facts he is referring.[11]  Plaintiff spends 30 pages responding to Defendant's Statement of Material facts, and he added an additional 105 "Additional Material Facts."  He also attached nearly 700 pages of exhibits and yet, never once, makes any reference to either, leaving both Defendant and the Court to guess at exactly which "facts" he believes might support a finding of liability.[12]  As set forth in Defendant's Statement of Material Facts, and as uncontroverted by Plaintiff, the

---

[11] Plaintiff's failure to mention, let alone connect any of his purported "facts" to his argument is improper.  Although, in an abundance of caution, the United States has responded to Plaintiff's "Additional Material Facts," the Court need not consider them, given that Plaintiff's motion does not reference them.

[12] Plaintiff's failure to excerpt his exhibits violates Rules of Practice of the District of Kansas 5.4.5 and 56.1.  *See* Rule 5.4.5(b)(1) ("A Filing User must submit as exhibits or attachments only those excerpts of the referenced documents that are directly germane to the matter before the court."); Rule 56.1 ("Where facts referred to in an affidavit or declaration are contained in another document, such as a deposition, interrogatory answer, or admission, a copy of *the relevant excerpt* from the document must be attached.") (emphasis added); *see also* 10A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2721 (4th ed.) ("[A] party using material to either assert that a fact cannot be or that it is genuinely disputed must cite 'to particular parts of the materials' support its position and should not simply attach voluminous documents without specific explanation.").  As with Plaintiff's "Additional Material Facts," the Court need not consider Plaintiff's exhibits, which are not referenced in his motion.

conduct which forms the basis for the alleged intentional torts – namely assault and battery – has absolutely nothing to do with the rendering of medical care or treatment.

It is undisputed that Plaintiff alleged Wisner "sexually molested" and "sexual[ly] exploit[ed]" him. *See* USA's SMUF ¶¶ 28-29, Pl.'s Opp. (Dkt. No. 56) at p. 26. It is undisputed that Plaintiff claimed Wisner was "grooming" him, and that Wisner's "unnecessary" and "degrading" touching of plaintiff's genitals was "consistent with [Wisner's] predatory history" and Wisner's "modus operandi." USA's SMUF ¶¶ 27, 30, Pl.'s Opp. (Dkt. No. 56) at pp. 26-27. It is further undisputed that Plaintiff alleged Wisner's behavior was "nefarious," and that Wisner "used the genital exams to satisfy himself." *See* USA's SMUF ¶¶ 31, 47, Pl.'s Opp. (Dkt. No. 56) at p. 27, 32. Plaintiff does not dispute making these statements. Instead, he claims these statements, which were submitted to the Court as Plaintiff's factual contentions in the Pretrial Order, are not evidence and have no "legal meaning or bearing on the issues before this court." *See, e.g.,* ¶ 28 in Pl. Opp. (Dkt. No. 56) at p. 26.

It is simply not true that Plaintiff's statements in the Pretrial Order are not evidence or have no legal bearing. "'[T]he primary purpose of pretrial orders is to avoid surprise by requiring the parties to 'fully and fairly disclose their view as to what the real issues of the trial will be.'" *Tilman v. Ralph Lauren Retail, Inc.*, 2019 U.S. Dist. LEXIS 80979, at *23-24 (D. Kan. May 14, 2019) (quoting *Zenith Petroleum Corp. v. Steerman*, 656 F. App'x 885, 887 (10th Cir. 2016)). "In a pretrial order 'counsel define the issues of fact and law to be decided at trial.'" *Madeville v. Quinstar Corp.*, 2000 U.S. Dist. LEXIS 21632, at *14 n.3 (D. Kan. Aug. 29, 2000) (quoting *Hull v. Chevron U.S.A., Inc.*, 812 F.2d 584, 588 (10th Cir. 1987)). "The parties are bound to those definitions and the content of the order, and may not contradict its terms." *Id.* (internal citations omitted). Moreover, "because the pretrial order represents a complete statement of all the

contentions of the parties, [a court] is justified in relying heavily on it in ruling on summary judgment motions and in trying cases." *Blume v. Meneley*, 283 F. Supp. 2d 1178, 1181 (D. Kan. Jul. 29, 2003) (internal citations omitted).

Contrary to Plaintiff's bald, unsupported assertions, contentions of fact set forth in a pretrial order are binding, and are to be relied upon not only by the parties, but also by the Court. Representations to the Court matter. Nowhere in the pretrial order does Plaintiff accuse Wisner of merely providing sub-standard medical care. He does not describe a mistake made by an otherwise competent medical professional, nor a procedure that would have been acceptable but for issues of consent.[13] Instead, in very clear terms, Plaintiff describes a sexual predator; Wisner intentionally grooming Plaintiff, and exploiting his position to repeatedly sexually assault him. In plain language, Plaintiff contends that Wisner touched Plaintiff, not to provide medical care or treatment (as Plaintiff and his expert have alleged that such touching was not medically unnecessary), but to satisfy his (Wisner's) own curiosity, and then deliberately attempted to cover up his behavior. *See* USA's SMUF ¶¶ 15, 31, Pl.'s Opp. (Dkt. No. 56) at 19, 27.

That the true basis of Plaintiff's complaint is sexual assault and not medical malpractice is only bolstered by counsel's questions of numerous VA witnesses at deposition. Examples of this questioning are enumerated in Defendant's Statement of Material Facts. *See* USA's SMUF ¶¶ 38-47, Pl.'s Opp. (Dkt. No. 56) at 28-46. In response, Plaintiff contends, as he did with respect to his

---

[13] Throughout this litigation and in his opposition papers, Plaintiff made a point of the fact that the alleged assaults occurred during a larger medical exam. While this may be relevant for a scope of employment analysis under Kansas law, it is irrelevant where the VA Immunity Statute is concerned. The language in the statute is unambiguous; unless the conduct which forms the basis of the tort concerns the "rendering of medical treatment or care," the statute will not apply. Here, while Wisner may have performed other legitimate medical procedures close in time to the assaults, there is nothing about repeated, deliberate sexual molestation that can be classified as "medical treatment or care."

factual contentions in the Pretrial Order, that these questions are "not evidence, let alone a material fact for purposes of summary judgment." Pl. Opp. (Dkt. No. 56) ¶¶ 27, 29-31, 47 at 26-27, 32.  As an initial matter, these particular questions, as posed by counsel and answered by witnesses during sworn depositions, are no less evidence than any other question and answer.  For example, it is a material fact, properly before this Court at summary judgment, that Plaintiff's counsel asked the following question and elicited the following response:

> Q:     … I represent in this group three plaintiffs who are former patients of Mr. Wisner, who have alleged that they were sexually molested or assaulted in some way.  Do you understand that?
>
> A:     Yes.

Leeson Dep. (Ex. "M") at 9:16-21; USA's SMUF at ¶ 45.

It is a material fact, properly before this Court at summary judgment, that Plaintiff's counsel asked the following question and received the following answer:

> Q:     You were focused, like we said, on the patient safety and if there was a sexual predator, to get him removed from service and – and hold him accountable?
>
> A:     Yes.

Kerry Dep. (Ex. "C") at 204:8-12; USA's SMUF at ¶ 39.

These questions were not posed as hypotheticals.  The testimony deserves no less weight than any other portion of a deposition.

Plaintiff does not deny that he asked these questions, but instead baldly asserts that statements made by counsel are not evidence.  And yet, of course they are.  First and foremost, the question, as phrased by counsel, is necessary to understand the answer provided by the witness.  A "yes" response, standing alone, means nothing.  It must be read in conjunction with the question.

And so, for example, it is certainly evidence that Dr. Lesson understood, as counsel explained to him, that counsel represents, among others, this Plaintiff, John Doe A.L., who is alleging that he was sexually molested and assaulted by Wisner.

Second, a statement of fact made by counsel during a deposition constitutes an evidentiary admission. *See Ascaro, LLC. v. Noranda Shining, Inc.*, 844 F.3d 1201, 1212 n.3 (10th Cir. 2017). An evidentiary admission can be made by a party or a party's attorney in a judicial proceeding, which includes a deposition. *See* Department of Justice, 28 C.F.R. § 21.1 (2019) (defining "judicial proceeding" to include a deposition). Although evidentiary admissions can be controverted and explained, the taint of inconsistency may not be completely removeable. *See, e.g., Raulie v. United States*, 400 F.2d 487 (10th Cir. 1968) (discussing estoppel with respect to amended pleadings in the context of judicial and evidentiary admissions).

To controvert an unfavorable evidentiary admission, plaintiff must (a) introduce additional evidence that demonstrates the previous admission was erroneous, or (b) explain the previous admission such that, rightly understood, it is not supportive of a conclusion against the plaintiff. *See Koch v. Koch, Indus., Inc.*, 996 F. Supp. 1273, 1277 (D. Kan. 1998) ("[O]rdinarily evidentiary admissions, in contrast, [may] be controverted or explained by a party."). A plaintiff cannot simply deny or retract the admission without offering additional evidence or explanation. *See Media Servs. Grp., Inc. v. Lesso, Inc.*, 45 F. Supp. 2d 1237, 1254-55 (D. Kan. 1999). And yet, this is exactly what Plaintiff has done here. Rather than attempting to explain the statements or to provide any context, Plaintiff simply claims that they are not evidence. On the contrary, these questions can and should be considered by the Court as evidence of the true nature of Plaintiff's claims.

The record on this point is now clear and unambiguous. There is no longer any doubt, and Plaintiff has admitted, that the conduct at issue here – Wisner's repeated sexual assault of Plaintiff

– was intentional.  As such, the FTCA's intentional tort exception, 28 U.S.C. § 2680(h), is implicated.  And, as discussed in Defendant's initial moving papers and above, Plaintiff cannot invoke the VA Immunity Act's "exception to the exception" to save his claims.  Contrary to Plaintiff's attempts to conflate the two, the criteria for the application of the VA Immunity Statute is *not* solely whether Wisner was acting within the scope of his employment under state law.  Rather, the key is whether the actions which form the basis of the alleged tort were undertaken in the provision of medical care or treatment.  Even if some of Wisner's interactions with Plaintiff involved the provision of medical care, the conduct complained of – repeated sexual molestation and exploitation – does not.  It is anathema; sexual assault and battery is simply not the type of conduct contemplated by § 7316(f).

To find otherwise would impermissibly read the requirement that the alleged tort was undertaken in the provision of medical care or treatment out of the VA Immunity Statute, and replace it with a state-by-state analysis of scope of employment.  *See Equal Employment Opportunity Comm'n v. Cont'l Oil Co.*, 548 F.2d 884, 889 (10th Cir. 1977) (applying "the rule that, where possible, statutes are to be given such effect that no clause, sentence, or word is rendered superfluous, contradictory, or insignificant.") (citing *McDonald v. Thompson*, 305 U.S. 263 (1938)) (additional citations omitted).  Such a result is clearly contrary to the Congressional intent in enacting the portion of the VA Immunity statute at issue here, which was to "shore up gaps in the personal immunity afforded government employees *without further broadening government liability* . . . ."  *Franklin*, 992 F.2d at 1502 (emphasis added); *see* H.R.Rep. No. 100–191, 100th Cong., 2d Sess. 19 (1988), reprinted in 1988 U.S.C.C.A.N. 432, 450 (stating that the legislation which enacted the portion of the VA Immunity Statute at issue here was designed to address instances where "State law characterizes an act of medical malpractice as an intentional

tort, leaving VA medical personnel potentially liable for an action for which the law intends the Government to assume liability.")  Nor can there be any question that a sexual predator like Wisner is not the type of government employee to whom Congress sought to extend personal immunity.

Because the VA Immunity Statute cannot be applied under the uncontroverted facts presented here, Plaintiff's claims are barred by § 2680(h), and must be dismissed for lack of subject matter jurisdiction.

## II.    PLAINTIFF'S "NEGLIGENT SUPERVISION" CLAIM FAILS BECAUSE IT IS BARRED BY THE DISCRETIONARY FUNCTION EXCEPTION[14]

The United States established in its initial moving papers that Plaintiff's claim for negligent supervision is barred by the discretionary function exception because Plaintiff cannot show that a federal statute, regulation, or policy specified a mandatory course of action that would have prevented his alleged harm.  In his Opposition, the only federal policy Plaintiff identifies relevant to his negligent supervision claim is VHA Directive 1063, a policy that was in effect only one full annual quarter before Wisner was barred from treating patients at the VA, and which stated that a PA's supervisor was to retrospectively review five randomly selected patient encounter notes each quarter.  But Plaintiff has not shown that a violation of this

---

[14] The United States also maintains that Plaintiff's negligent supervision claim must be dismissed because he failed to properly present this claim to the VA as required by 28 U.S.C. § 2675(a).  However, in the interest of efficiency, this argument will not be addressed in the United States' reply, beyond to note that the fact that the VA denial letter cited in Plaintiff's opposition is irrelevant.  The fact that the VA mentioned negligent supervision in this letter does nothing more than show that *other plaintiffs* had previously exhausted such claims.  But this is not the correct standard.  Under the FTCA, *each individual* plaintiff must exhaust their claims prior to filing suit.  *See Haceesa v. United States*, 309 F.3d 722, 734 (10th Cir. 2002) ("[E]ach claimant must individually satisfy the jurisdictional prerequisite of filing a proper claim.'") (*quoting Muth v. United States*, 1 F.3d 246, 249 (4th Cir. 1993)); *Dalrymple v. United States*, 460 F.3d 1318, 1325 (11th Cir. 2006) ("The FTCA requires that *each* claim and *each* claimant meet the prerequisites for maintaining a suit against the government.") (emphasis in original).

purported mandatory duty caused his alleged harm, as he must in order to overcome the discretionary function exception.  This is not at all surprising, particularly since Wisner falsified medical records in order to avoid getting caught.[15]  Moreover, even if one indulges Plaintiff's unsubstantiated theory and assumes that a retrospective review of five random patient encounter notes would have detected Wisner's improper conduct, Plaintiff's claim would nonetheless be barred because the policy does not specify a mandatory course of action following said discovery.  And, of course, it's the response to a discovered deficiency that could have prevented Plaintiff's alleged harm, not the discovery itself.  Plaintiff's failure to address this argument in his Opposition is telling.  Plaintiff's negligent supervision claim cannot survive the United States' motion for summary judgment.

Initially, Plaintiff loses sight of the issues before the Court by arguing that VHA Directive 1100.19 provides specific, non-discretionary requirements that allow his negligent hiring and retention claims to overcome the discretionary function exception.  This Court rejected these precise arguments almost two years ago, when it dismissed Plaintiff's claims for negligent hiring and retention.  *See* Mem. and Order, Dkt. No. 40, at 13-16.  Claims for negligent hiring and retention are no longer before the Court in this action, nor have they been for almost two years.

The only federal[16] policy Plaintiff identifies in support of his negligent supervision claim is VHA Directive 1063, a policy that was undisputedly in effect only one full annual quarter of

---

[15] *See* USA's SMUF ¶¶ 14, 15.

[16]  To the extent Plaintiff argues that his claim escapes the discretionary function exception by virtue of the Kansas Physician Assistant Licensure Act, Plaintiff is mistaken on the law.  To overcome the discretionary function exception, Plaintiff must show the challenged conduct was limited by a federal statute, regulation, or policy; a state law will not suffice.  *See*

Wisner's tenure treating patients at the VA.  *See* USA's SMUF ¶ 36, Pl.'s Opp. (Dkt. No. 56) at

28.  Plaintiff argues that VHA Directive 1063 "could not be more specific" – it required the

collaborating physician "to perform a retrospective review of five randomly selected patient

encounter notes four times a year to ensure that Wisner was still performing with 'ongoing

competency and medical appropriateness.'"  Pl.'s Opp. (Dkt. No. 56) at 68.  Plaintiff also argues

that VHA Directive 1063 required the collaborating physician to have weekly contact with

Wisner to discuss clinical management issues.[17]  *Id.*  Plaintiff alleges that VA did neither of these

things.  *Id.*

Plaintiff's analysis, however, is fatally incomplete.  "To circumvent the discretionary

function exception, the mandatory duty alleged must be one whose breach bears a causal

relationship to the Plaintiffs' injuries, thereby giving rise to their cause of action against the

government."  *See Clark v. United States*, 695 F. App'x 378, 386 (10th Cir. 2017) (*citing*

*Franklin Savings Corp. v. United States*, 180 F.3d 1124, 1132-33 (10th Cir. 1999)).

Plaintiff does not, and cannot, show that his alleged harm was caused by a failure to

review five randomly selected patient encounter notes.  Nor does Plaintiff show that his alleged

harm was caused by a failure to be in weekly contact with Wisner to discuss any difficult clinical

management issues.  Plaintiff disputes the disconnect between the purported mandatory

---

*Sydnes v. United States*, 523 F.3d 1179, 1184 (10th Cir. 2008); *see also* Mem. and Order, Dkt.
No. 40, at 12 ("The court will not consider the state of Kansas PALA.").

[17]  As the United States explained in its initial moving papers, *see* Mot. S.J. (Dkt. No. 52)
at 31, and Plaintiff failed to rebut, VHA Directive 1063 actually states the supervisor and the PA
"will be in contact at least weekly to discuss *any difficult or unusual clinical management
issues.*"  *See* VHA Dir. 1063 (Ex. A) at A-5 (emphasis added).  The discussion contemplated in
this section is conditioned upon the existence of a "difficult or unusual clinical management
issue[]."  *Id.*  Absent such issues, weekly discussion was unnecessary.  *See id.* (The PA "requires
infrequent consultation with the collaborating physician.").

directives contained in VHA Directive 1063 and Plaintiff's alleged harm, *see* Pl.'s Opp. (Dkt. No. 56) at 72, but he fails to show any facts in the record to support this conclusory assertion. *See Phillips v. Calhoun*, 956 F.2d 949, 951 (10th Cir. 1992) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings.") (citations omitted).[18]

Moreover, Plaintiff's Opposition fails to respond the crux of the United States' argument. Even indulging the unsupported and implausible theory that a review of five randomly selected patient encounter notes from one quarter of Wisner's tenure or a conversation with Wisner about clinical management issues would have detected Wisner's improper conduct, the manner in which Wisner's supervisor responded to said information (be it disciplinary action, termination, etc.) is ultimately discretionary. *See Hardscrabble Ranch, LLC v. United States*, 840 F.3d 1216, 1222 (10th Cir. 2016) ("The existence of some mandatory language does not eliminate discretion when the broader goals sought to be achieved necessarily involve an element of discretion.") (citation and internal quotation marks omitted). Plaintiff failed to identify any federal statute, regulation, or policy dictating a specific course of action to be taken upon discovering deficiencies in Wisner's performance.[19] Indeed, decisions regarding employee discipline and

---

[18] Contrary to Plaintiff's suggestion, *see* Pl.'s Opp. (Dkt. No. 56) at 72, courts do not draw an inference in the nonmovant's favor from evidence that does not exist, particularly where, as here, the absence of such evidence is the central issue in the summary judgment motion. *See Boyer v. Bd. of Cty. Com'rs of County of Johnson County*, 922 F. Supp. 476, 484 (D. Kan. 1996) ("Speculation does not create a *genuine* issue of fact; instead it creates a false issue, the demolition of which is a primary goal of summary judgment.") (citation omitted) (emphasis in original).

[19] The United States briefly responds to Plaintiff's argument concerning the second prong of *Berkovitz*, *see* Pl.'s Opp. (Dkt. No. 56) at 69-70, only to note that Plaintiff fundamentally confuses and conflates the two prongs of the test. Although it is Plaintiff's burden, the United States established that Plaintiff's purported negligent supervision claim is barred by the discretionary function exception pursuant to both prongs of the two-part *Berkovitz* test. *See* Mot. S.J. (Dkt. No. 52) at 29. In arguing that there is no public policy analysis required by VHA Directive 1063 because the Directive "specified exactly how many times a senior physician

termination are at the core of the discretionary of function exception.  *See Sydnes*, 523 F.3d at 1186.  As such, Plaintiff's Opposition confirmed what the United States established in its initial moving papers.  Plaintiff's negligent supervision claim is barred by the discretionary function exception.

---

assistant had to meet with his supervising doctor and have his medical files randomly reviewed," Pl.'s Opp. (Dkt. No. 56) at 69, Plaintiff has conflated the second *Berkovitz* prong with the first.

## CONCLUSION

For the reasons stated in the United States' motion for summary judgment (Dkt. Nos. 51, 52) and herein, the United States respectfully submits that this Court should grant the United States' motion for summary judgment and dismiss Plaintiff's action against the United States in its entirety.

Dated: August 19, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General, Civil Division

JAMES G. TOUHEY, Jr.
Director, Torts Branch

ROGER D. EINERSON
Deputy Director, Torts Branch

s/ Sarah E. Haston
_____
SARAH E. HASTON
*Counsel for Defendant United States*
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
P.O. Box 888
Washington, D.C. 20044-0888
Tel. / Fax: (202) 616-4233 / 5200
Sarah.E.Haston@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2019, the foregoing was electronically filed with the clerk of the court by using CM/ECF system which will send a notice of electronic filing to the following:

> J'Nan C. Kimak
> jck@hfmlegal.com
>
> Daniel A. Thomas
> dat@hfmlegal.com
>
> Nichelle L. Oxley
> nlo@hfmlegal.com
>
> *Attorneys for Plaintiff*

I further certify that a copy of the foregoing was sent via First Class Mail to the following non-ECF participants:

> Mark Wisner
> *Defendant Pro Se*
> KDOC # 0117741
> P.O. Box 546
> Norton, Kansas 67654-0546

> s/ Sarah E. Haston
> _____
> SARAH E. HASTON
> *Counsel for Defendant United States*