```
 1                 UNITED STATES DISTRICT COURT
                        DISTRICT OF KANSAS
 2

 3   AARON LEININGER,

 4     Plaintiff,                         Case No. 16-2627

 5     v.

 6   UNITED STATES OF AMERICA and         Kansas City, Kansas
     MARK E. WISNER,                      Date:   07/06/2020
 7
       Defendants.
 8

 9   ............................

10
                 PARTIAL TRANSCRIPT OF BENCH TRIAL
11                 DEFENDANT'S OPENING STATEMENT
               BEFORE THE HONORABLE DANIEL D. CRABTREE
12               UNITED STATES DISTRICT COURT JUDGE

13   APPEARANCES:

14   For the              Daniel A. Thomas
     Plaintiff:           Michael S. Kilgore
15                        Humphrey, Farrington & McClain
                          221 West Lexington Avenue
16                        Independence, MO 64050

17
     For the United       Lawrence Eiser
18   States of America:   Sarah Haston
                          U.S. Department of Justice
19                        Civil Division, Torts Branch
                          Benjamin Franklin Station
20                        P.O. Box 888
                          Washington, DC  20044
21

22

23

24   _____
       Proceedings recorded by machine shorthand, transcript
25   produced by computer-aided transcription.
```

1        (Beginning of excerpt.)
2             MR. EISER:  Thank you, Your Honor.  And I want to
3    thank you for allowing the -- the parties to present this trial
4    in this unusual format, keeping us all safe.
5             Outrage.  Plaintiff's counsel begins and ends his case
6    in outrage, outrage that is shared by all involved in this
7    case, plaintiff and his family certainly but also the many
8    other veterans who were victimized by Mr. Wisner and the
9    Eastern Kansas VA and its healthcare providers who commit their
10   lives to caring for our nation's veterans, and the VA Office of
11   Inspector General which investigated and caught Mr. Wisner,
12   laying the foundation for his prosecution, conviction, and
13   15-year prison sentence.
14            Indeed, all who have heard about these matters cannot
15   help but be outraged.  A sexual predator in the guise of a
16   healthcare provider preying upon wounded warriors:  outrageous.
17   But the task of the court, in deciding the legal issues here,
18   is putting aside the disgust and outrage at Mr. Wisner's
19   conduct and dispassionately apply the facts to the law.
20            In all aspects of our presentation of our defense, the
21   United States seeks to respect and honor Mr. Leininger.  We
22   respect and honor his service to his country and his sacrifices
23   in that cause.  That respect and honor compels us to make
24   certain concessions in this case.  We accept that plaintiff was
25   abused by Mr. Wisner.  We accept his version of the facts of

1  his encounters with Mr. Wisner.  We will not dispute that he
2  was subjected to unnecessary, ungloved genital examinations of
3  two to three minutes in duration during each and every one of
4  his nine encounters with Mr. Wisner over a two-year period in
5  2012 to 2014.  We accept his assertion that he was subjected to
6  gross and inappropriate sexual statements from Mr. Wisner
7  during some of his examinations, and we stipulated to some of
8  those concessions in the court's pretrial order.
9          So if we accept his statement of facts, why are we
10 here, particularly given that, as noted in one of plaintiff's
11 own filings, his opposition to the United States' motion to
12 continue, Docket 108, the United States has resolved the vast
13 majority -- 85 to be precise -- of the cases brought by other
14 veterans abused by Mr. Wisner in the same manner?
15         Two reasons compel us to continue.  First, it's the
16 plaintiff's -- this plaintiff's damages claim.  While we
17 respect and honor plaintiff and his service, that does not mean
18 that the United States --
19         MR. THOMAS:  Your Honor --
20         MR. EISER:  -- will pay for damage claims --
21         THE COURT:  Hold on just a second; there is an
22 objection apparently.
23         Mr. Thomas.
24         MR. THOMAS:  I will object that this is getting into
25 confidential settlement negotiations, which are not admissible

1  evidence, and that's what he -- that's what's happening here.
2          THE COURT:  Well, just to review, the defense counsel
3  had begun to talk about plaintiff's damage claims.  That's
4  certainly a fair topic for opening statement and for evidence.
5  I did not anticipate that Mr. Eiser was going to talk about
6  settlement discussions.  If he was, that -- I would agree with
7  your objection.  It doesn't appear to me he was; so your
8  objection's overruled.
9          MR. EISER:  While we respect and honor plaintiff and
10 his service, that does not mean that the United States will pay
11 for damage claims that are unsupported by the evidence and
12 untethered to reality.  As the evidence will show, plaintiff is
13 asking the court for just that:  damages to pay for a lifetime
14 of medical treatment for an extensive variety of medical
15 ailments completely unrelated to the emotional distress caused
16 by his encounters with Mr. Wisner.
17         Indeed, plaintiff seeks damages for mental health
18 treatment that he will never incur because he will not obtain
19 such treatment from private medical doctors.  And even -- and
20 if he returns to the VA, the doctors most familiar with PTSD
21 suffering veterans, also the mental healthcare providers that
22 he says he would prefer, that care would be again free to him
23 and incurred by the VA.
24         The costs for a lifetime of private Cadillac medical
25 insurance is simply too high and untethered to the facts of

1  this particular case.  Given this, the United States is
2  obligated to defend the case despite its frank acknowledgement
3  of its employee's wrongs, its concessions in the court's
4  pretrial order and its continuing respect for plaintiff's
5  service and sacrifice.
6           Second, the United States -- the United States
7  presents three legal defenses:  statute of limitations, scope
8  of employment, and intentional battery, all of which the court
9  has said it will decide pursuant to post-trial briefing.
10          The first defense is simple:  statute of limitations.
11 We contend that a reasonable plaintiff -- this test is an
12 objective one -- would have known of his injury and its
13 government cause more than two years before he filed his
14 administrative claim with the VA in February of 2016.  The only
15 evidence we offer is the only evidence that is relevant from
16 plaintiff's own medical records, which are USA Exhibits 413 and
17 414, which show the dates of his visits with Mr. Wisner and the
18 date that he filed his administrative claim.  As you will see,
19 he filed his administrative claim in February of 2016, which is
20 well after the two-year time bar when a reasonable plaintiff
21 would have known of his injury and its cause.
22          Second, our second defense is scope of employment.  By
23 this defense, the United States points out that if the court
24 concludes from the plaintiff's evidence that he was subjected
25 to intentional sexual assaults, that would, we submit, under

1  Kansas law render those acts outside the scope of his
2  employment as a physician's assistant with the Eastern Kansas
3  VA.  Scope of employment is a fact question and the fact finder
4  is you, Your Honor.  As this court accurately summarized the
5  law in its order resolving our dispositive motion dated April
6  24th, 2017, in Kansas an employee acts within the scope of his
7  employment when (1) he performs services for which he has been
8  employed or (2) he does anything reasonably incidental to his
9  employment.  The test is not whether the employer expressly
10 authorized or forbid the conduct.  Instead the court asks
11 whether the employer should have fairly foreseen the conduct
12 from the nature of the employment and the duties relating to
13 it.
14        The scope question doesn't turn on whether
15 Mr. Wisner's misconduct was foreseeable to the VA.  This isn't
16 a criminal case.  It -- whether it was foreseeable to the VA
17 because of particular actions from Mr. Wisner's past, as stated
18 by this court, it turns on whether this court finds that the VA
19 should have foreseen Wisner's misconduct from the nature of the
20 employment and the duties relating to it.
21        For example, courts generally find that it is
22 foreseeable that a -- the misconduct of a security guard or
23 that his -- his conduct will escalate to violence in his
24 encounters with the public and thus remains within the scope of
25 employment for it.  Here, as part of our concessions to

1   plaintiff, the United States has stipulated in the court's
2   pretrial order to all the relevant facts that the court would
3   need in answering the question about scope.  Those -- those
4   concessions are:
5           No. 8.  The VA employed Mark Wisner to conduct
6   physical exams which may have involved sensitive or intimate
7   matters.
8           9.  The VA employed Mark Wisner to, in part, conduct
9   physical examinations of plaintiffs which may have involved
10  sensitive or uncomfortable matters.
11          10 and 11.  The VA did not require a supervisor or
12  chaperone to be present during Mark Wisner's examinations of
13  his male patients.
14          15.  Plaintiff was seeking medical care at medical
15  appointments documented in the medical records.
16          16.  Mark Wisner's medically documented medical
17  examinations of the plaintiff occurred at a Leavenworth VA
18  facility while the facility was opened and operating.
19          17.  Mark Wisner's medically documented examinations
20  of plaintiff occurred in an exam room at the Leavenworth VA
21  facility.
22          18.  Mark Wisner's medically documented genital exams
23  were part of his overall physical examinations.
24          19.  At least some portions of the medical care Mark
25  Wisner provided plaintiff was for a valid medical purpose in

1  order to provide diagnostic care.
2          These are all the relevant facts that might address
3  this scope question as it's properly been stated by this court
4  and in Kansas law.  Now the VA, of course, did not foresee the
5  misconduct.  And this court, in ruling on summary judgment,
6  agreed but held that Mr. Wisner's misconduct may be deemed "a
7  slight deviation from his assigned duties, in which case the
8  scope defense is lost."  But, in defending this case, we simply
9  cannot accept that when a healthcare provider who is assigned
10 to heal wounded warriors instead harms them with intentional
11 repeated sexual assaults, that conduct cannot be seen as a
12 slight deviation.  Indeed, those actions are entirely
13 antithetical to his assigned duties.
14         Either way there's no additional evidence from the VA
15 or the plaintiff that could impact the legal decision, and we
16 will not offer any.  Rather, we will rely on the plaintiff's
17 evidence and some brief opinion testimony from our physician's
18 assistant expert, Dr. Jeffery Nicholson, regarding the nature
19 and duties of a PA.
20         Three, our third and final liability defense is the
21 intentional battery exception to the FTCA.  If the court should
22 find that Mr. Leininger was the victim of an intentional sexual
23 assault and battery, then that conduct is an expressed
24 exception to the FTCA.  Even plaintiff admits this was
25 intentional conduct by Mr. Wisner, but plaintiff believes there

1  is an exception to this exception in the VA statute -- fair
2  enough -- and the parties will brief these legal issues in
3  post-trial briefs.  But this answer, like the scope and time
4  limit defenses, is simply a legal conclusion that the court is
5  to draw from the plaintiff's presentation of his claim.  We
6  have no additional facts to provide.  That's it.  That's the
7  extent of the relevant liability evidence.
8          Now, Mr. Thomas, in his opening, said -- made several
9  statements about what Mr. Wisner did to others, what VA
10 supervisors and investigators should have done, what they knew,
11 and what VA policies say, and none of that could possibly be
12 relevant to the scope of employment, to the three technical
13 legal defenses that we present here.
14         Now, we'll also present the expert testimony of
15 Dr. Alan Abrams who conducted a detailed examination of the
16 plaintiff and his extensive medical history to help you sort
17 out what injury plaintiff has suffered as a result of his
18 interactions with Mr. Wisner as opposed to the extensive
19 chronic mental health conditions and injuries that pre-existed
20 for 20 years before he ever encountered Mark Wisner in 2012.
21         We may also call Dr. William Clark, an economist, to
22 rebut certain assertions by plaintiff's expert economist
23 regarding plaintiff's claimed damages.  But that and
24 cross-examination of plaintiff's witnesses is the extent of our
25 presentation at this trial.  We will be brief because, while

1   the legal defenses will be addressed post-trial, the main
2   triable issue here is plaintiff's claim for damages.
3          Now, a word about damages.  In this regard, plaintiff
4   makes an exceedingly unusual request for damages as you've
5   heard.  If this were a jury case, the jury would -- would be
6   instructed on the law of damages pursuant to Kansas Pattern
7   Instruction 171.02 which states:
8          "When determining the amount of damages sustained by
9   the plaintiff, you must allow the amount of money that will
10  reasonably compensate plaintiff for his injuries and losses
11  resulting from the occurrence in question.  These injuries and
12  losses may include any of the following shown by the evidence.
13         1.  Medical expenses.  Medical expenses include the
14  reasonable expense of necessary medical care, hospitalization
15  and treatment received as a result of plaintiff's injuries to
16  date and the medical expenses plaintiff reasonably expected to
17  incur in the future reduced to present value."
18         Here there will be none.  Plaintiff presents no bills
19  for past medical treatment related to the mental health
20  injuries he claims were caused by Mr. Wisner.  Indeed, he has
21  no bills because he had sought no treatment for those claimed
22  emotional injuries.
23         Back to the instruction.
24         "2.  Economic loss.  Economic loss includes loss of
25  time or income and losses other than medical expenses incurred

1   as a result of plaintiff's injuries to date and the economic
2   loss plaintiff is reasonably expected to incur in the future
3   reduced to present value."
4           Here there is no claim for lost income or lost wages,
5   though plaintiff makes the unusual claim that he should be
6   awarded sufficient money to purchase a gold-plated health
7   insurance policy for the rest of his life, which I'll discuss
8   in a moment.
9           The instruction continues.
10          "Non-economic loss.  Non-economic loss includes pain,
11  suffering, disabilities, disfigurement and any accompanying
12  mental anguish suffered as a result of plaintiff's injuries to
13  date and the non-economic loss plaintiff is reasonably expected
14  to suffer in the future reduced to present value."
15          Here plaintiff will present some evidence of his pain
16  and suffering as a result of his encounters with Mr. Wisner.
17  But the instruction of the law goes on to state, "When
18  determining the amount of plaintiff's damages, you must
19  consider the plaintiff's age, condition of health before and
20  after the occurrence in question, and the nature, extent and
21  duration of the plaintiff's injuries."
22          Here the evidence will show that -- the following:
23  Plaintiff suffered from serious and permanent mental health
24  conditions prior to his contact with Mr. Wisner.
25          2.  That he was sufficiently untroubled by his

1  encounter with Mr. Wisner to ever complain about it to anyone
2  at the VA or anywhere else until after Wisner was caught.
3         3.  Plaintiff never sought active mental health
4  treatment for any of the problems that could have been caused
5  or exacerbated by his encounters with Mr. Wisner; and
6         4.  His objective medical records and examinations
7  indicate that his mental health condition appears to be better
8  today in 2020 than it was in the years before he ever
9  encountered Mr. Wisner in 2012.
10         The pattern instruction continues.
11         "You must itemize the amount of damages awarded in
12  this case on the verdict form."  The itemization of damages, in
13  particular future care damages, is particularly important in
14  this case because, in our post-trial briefs, we will ask that
15  any such award be placed into a U.S. grantor medical care
16  reversionary trust because of the uncertainty about whether
17  plaintiff needs or would obtain such care; that way the funds
18  will be preserved for the purpose of the medical care needed
19  for the injuries here.  But if those funds are not needed or
20  used, as plaintiff's medical history would indicate, they would
21  be returned to the United States.
22         We submit that the unusual request for an award of an
23  insurance policy is unwarranted, unnecessary and in violation
24  of the Supreme Court's admonition that the United States is not
25  to pay twice for plaintiff's damages in an FTCA action.

1  Plaintiff claims that private health insurance is needed
2  because he is uncertain if he will return to the VA, any of the
3  hundreds of VA medical centers around the country.  He -- he
4  claims he will not return -- he may not return to any of them
5  for his free medical care because doing so may be too
6  emotionally traumatic for him.
7         This claim is belied by the fact that plaintiff
8  returned to the Eastern Kansas VA many times in the three years
9  immediately after his encounters with Mr. Wisner from June 2014
10 to June 2017, which included over 20 in person examinations,
11 and he did this without incident.  He -- he will -- the
12 evidence will show that he only stopped going to the VA in 2017
13 because, as he told his new private doctors, of this lawsuit.
14        Now, perhaps more importantly, plaintiff actually had
15 private health insurance both through the VA Choice Program and
16 through an employer from August 2016 to September 2018 and
17 still never sought treatment for his PTSD and related mental
18 health problems that he claims to have been exacerbated because
19 of Mr. Wisner despite his private doctors telling him to get
20 that treatment.  As I said, the -- some of that private
21 treatment was through the VA Choice Program.  So the plaintiff
22 knows how to access private medical care through the VA and its
23 Choice Program because he's done it.
24        Now, plaintiff explains his omission of ever getting
25 the mental health treatment that his lawyer claims he needs in

1   the two years that he had private health insurance because he
2   says he can't talk to private sector doctors about his PTSD
3   related problems because they are unfamiliar with the problems
4   of military veterans.  So, in asking for a private health
5   insurance policy for life, plaintiff's -- plaintiff is
6   requesting an extraordinary amount of damages that he doesn't
7   need and will not use.
8          So the triable issue here and now is damages, but for
9   some reason plaintiff's counsel wants to dump a mountain of
10  deposition transcripts and VA policies and other evidence on
11  the court that can have no relevance to the claims that remain
12  in the case.
13         After more than three years of discovery and two
14  thoughtful dispositive motion rulings by this court, the
15  plaintiff presents two claims here:  (1) medical malpractice,
16  negligence; and (2) outrage, intentional infliction of
17  emotional distress.
18         Plaintiff claims he needs to dump his discovery
19  mountain on the court for two reasons:  (1) to show
20  foreseeability to defeat the United States' scope of employment
21  defense; and (2) to prove up his outrage claim.  Neither claim
22  withstands scrutiny.
23         Foreseeability.  Plaintiff's counsel claims he needs
24  to present multiple deposition transcripts of VA employees to
25  show that they should have foreseen Mr. Wisner's misconduct.

1  That assertion misapprehends the scope of employment analysis
2  under Kansas law.  As noted previously, under the governing law
3  of this case, foreseeability is relevant to whether the
4  employee's misconduct at issue is foreseeable to the employer
5  from the nature and duties of the employment.  We have
6  stipulated that Wisner was hired as a PA.  His job duties
7  included providing genital exams, which are uncomfortable and
8  sensitive, and the VA did not require a chaperone to be in the
9  exam room when he was examining male patients.
10             What individual VA supervisors knew about Mr. Wisner's
11 prior conduct and/or what they should have done about it might
12 be relevant to a claim for negligent supervision.  However,
13 that claim has been firmly dismissed by this court for two
14 independent reasons.
15             As this court stated in its dispositive ruling dated
16 January 6th, 2020, "Plaintiff did not mention 'negligent
17 supervision' or any action or inaction of supervisors in its
18 administrative claim."  That's from page 9.  So there's no
19 claim in this case arising from anything that plaintiff's
20 supervisors did or failed to do.
21             Mr. Thomas seeks to present his mountain of evidence
22 in support of claims that are not in this case, in particular
23 claims against the VA for negligent hiring, negligent retention
24 and negligent supervision.  Those claims have all been
25 dismissed by this court.  They are not before the court.  There

1    is no claim against any VA supervisor or the VA generally for
2    its conduct in supervising Wisner.  The only liability here is
3    respondeat superior.  The United States may be liable only for
4    the conduct of Mr. Wisner.
5         Now, the other reason Mr. Thomas wants to dump this
6    evidence is to prove his intentional infliction of emotional
7    distress claim.  Now, the court has already ruled that the only
8    VA employee's conduct at issue in this case is that of
9    Mr. Wisner because that's the only employee mentioned in
10   plaintiff's administrative claim.  The United States has
11   stipulated that Mr. Wisner's assault happened, were intentional
12   and outrageous.
13        If the court finds from plaintiff's own testimony that
14   he has suffered the requisite severe emotional distress, then
15   the outrage claim would be established subject to the same
16   three technical FTCA defenses of statute of limitation, scope
17   and intentional battery to be briefed in post-trial motions.
18   No further evidence is necessary or relevant on that outrage
19   claim.  Indeed, the claim for outrage appears entirely
20   superfluous because all parties agree that what Mr. Wisner did
21   was outrageous and outside the bounds of civil society, which
22   is why he is in prison right now.
23        If the United States' defenses to the negligence claim
24   fail and the additional claim for outrage based on the same
25   conduct -- let me back up.

1        If the United States' defenses to the negligence claim
2  fail and the additional claim for outrage based on the same --
3  same conduct doesn't add anything to the damages, it is, in
4  fact, a redundant distraction.
5        Mr. Thomas will begin and end his presentation of
6  plaintiff's case in outrage, but that outrage gets us nowhere.
7  As I stated, the United States, the VA, and all of its
8  employees share his outrage at the conduct of Mr. Wisner.  That
9  outrage doesn't prove the claim.  It doesn't disprove the legal
10 defenses and it doesn't multiply the legal damages.
11       We look forward to presenting our defense case to the
12 court.  Thank you, Your Honor.
13    (End of requested excerpt.)
14
15                          CERTIFICATE
16    I certify that the foregoing is a true and correct
17 transcript from the stenographically reported proceedings in
18 the above-entitled matter.
19    DATE:  July 7, 2020
20
21              /s/Kimberly R. Greiner
                KIMBERLY R. GREINER, RMR, CRR, CRC, RDR
22              United States Court Reporter
23
24
25